Merrimack,
March 3, 1931.

### ANNIE E. BARRETT *v.* PULLMAN COMPANY.

*Robert W. Upton, Joseph C. Donovan* and *Laurence I. Duncan* (*Mr. Upton* orally), for the plaintiff.

*Johnson, Clapp, Ives & Knight* (of Massachusetts), *Allen Hollis* and *Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the defendant.

MARBLE, J.   At the time of the accident the plaintiff was a passenger on the State of Maine express, so-called.   She was traveling from the city of New York to Plymouth in this state, and was the occupant of a lower berth in one of the defendant's sleeping cars.   Although the accident occurred in the state of Connecticut, no question relating to conflict of laws is presented by the record.   The presiding justice instructed the jury correctly and without exception that the common-law rule of reasonable conduct was applicable.

The plaintiff's berth was in section 9, which was the second compartment from the rear of the car.   The car was the standard twelve-section sleeping car containing twenty-four berths and a drawing-room.

A short time before the accident the plaintiff observed the porter

working at section 11, which was directly back of her. She noticed, as she turned her head, that a small stepladder was standing midway between the forward and rear ends of section 11, spread open and extending some inches into the aisle. This stepladder was used by the porter in making up the berths. It consisted of two steps, was twenty inches high, and had a spread of twenty-four inches when resting on the floor.

While the porter was engaged in making up her berth, the plaintiff moved across the aisle to section 10 and sat, as she had been sitting in her own section, facing the front of the car. Finding it difficult to read because of the dim light, she rose after a few moments and started for the ladies' dressing room. She paused, however, to tip the porter, who was standing near the center of section 9. As she turned to leave him she stumbled over the stepladder, which had been moved from its original position, and fractured her ankle.

Her direct testimony on that point is as follows: "I turned to the rear and had taken about two steps when I hit an object . . . I hit the left foot and turned my ankle and that threw me out of balance; the swaying of the train threw me backwards, and I caught my right foot in the same object, and I couldn't release it until I went down on the floor." She identified the object as "the steps" she "had seen earlier in the evening." She also testified that these steps were concealed by the curtains, which had been drawn across the front of the section, and extended into the aisle about ten inches.

The defendant's rule book contained the following instruction to porters: "Under no circumstances, should stepladder be allowed to stand in body of car or passageway when not in use, as there is danger of passengers falling over same."

It is true that the porter's version of the accident differed from that of the plaintiff in several essential particulars. This did not entitle the defendant to a directed verdict, however. "On the contrary, the fact that the relevant evidence was conflicting created a situation in which it was proper for the court to submit the issue to the jury to find whether the plaintiff's or the defendants' contention was sound." *Duncan* v. *Company*, 81 N. H. 398, 399.

If the jury believed the plaintiff's testimony, they were clearly justified in finding negligence on the part of the porter, even though the stepladder were deemed to be in use at the time of the accident within the meaning of the quoted instruction. On the porter's own statement the stepladder, although folded and resting against the arm of the rear seat of section 9, was nevertheless occupying space within

the main passageway. Whether a person of ordinary prudence, charged with like duties, would have left it in such a position was a question for the jury to determine, whatever the interpretation of the rule. The evidence authorized a finding that it "projected unnecessarily," that the defendant knew it "ought not to so project, and that it was an instrumentality wholly within the defendant's control." *Guevin* v. *Railway*, 78 N. H. 289, 290.

With reference to the defendant's contention that the verdict is founded on conjecture, it is sufficient to call attention to the positive assertions of the plaintiff and to the porter's testimony that there was nothing in the aisle over which a person might trip except the stepladder. It is not reasonable to suppose from the plaintiff's description of the accident that she stumbled over one of the legs of the berth, as the defendant suggests. These legs were set in from the aisle three and a half inches, and the side of the berth extended down to within five and three-quarters inches of the floor. The fact that the plaintiff did not actually see the object with which she came in contact is not material, since she had "adequate data" on which to base her conclusion as to its identity. 1 Wig., Ev. (2d *ed.*), *s.* 659.

From the plaintiff's testimony that "the steps caught" her foot "in a twisted position," and that she "fell down on the floor" with her foot "caught in that way," it is fair to assume that in attempting to regain her balance she thrust her foot between the steps of the ladder and that her ankle was broken by the sudden pressure which would naturally be applied when she fell. She is not obliged, however, to establish with certainty the exact manner in which her injury was inflicted, since there is no question but that it resulted from her fall.

While the plaintiff's testimony at the trial differed in some respects from that contained in her deposition previously taken, the discrepancies were neither sufficient nor of a kind to render the rule of *Harlow* v. *Leclair*, 82 N. H. 506, applicable. See *Watkins* v. *Railroad*, 83 N. H. 10, 13.

The defendant also maintains that the plaintiff's knowledge that the stepladder was being used by the porter in his work, coupled with her conduct in looking up at the dim lights as she turned toward the rear of the car, constituted contributory negligence as a matter of law. This position is untenable. One who is forgetful or inattentive is not necessarily negligent. *Hill* v. *Company*, 81 N. H. 190, 193, 194, and cases cited. The plaintiff was not required to take every precaution she could to prevent the accident. *Weeks* v. *Com-*

*pany*, 78 N. H. 26, 29. "Her duty was to act as the average person might have acted." *Sevigny* v. *Company*, 81 N. H. 311, 313. And whether or not she did so act was clearly a question for the jury.

Other exceptions taken by the defendant are understood to be waived.

*Judgment on the verdict.*

ALLEN, J., did not sit: the others concurred.