Hillsborough, }
Dec. 5, 1933. }

PHYLLIS GOLDSTEIN *v.* UNITED AMUSEMENT CORPORATION & *a.*

*McLane, Davis & Carleton (Mr. Dudley Orr* orally), for the plaintiff.

*Wyman, Starr, Booth & Wadleigh (Mr. Ralph E. Langdell* orally), for the defendants.

MARBLE, J. The plaintiff was injured by falling down the stairway leading to the defendants' bowling alleys in Manchester. She had attended a motion-picture theater earlier in the evening and had gone to the alleys at the conclusion of the performance to meet her husband.

The stairway, which was made of marble, had a pitch of 36 degrees and was 61 inches wide. There were inequalities in the risers and in the width of the treads. The second riser from the top was one and three-eighths inches higher than the first riser, and the tread was

about ten inches wide. One of the defendants' experts stated that his foot projected about an inch and a half beyond the edge of the tread when he descended the stairs in the ordinary way. Another expert testified in effect that a material difference in the height of the risers in a staircase is important from the point of view of safety and that a difference of one and three-eighths inches is a material difference. The building inspector of Manchester stated that the stairs were "all right, until you reach the top," and that it was unusual "to have the top step a lower riser than the rest."

Not finding her husband, the plaintiff left the alleys through "two narrow doors" which swung "either way." These swinging doors were set back only twenty inches from the head of the stairs, and when fully opened, projected an inch beyond the first step.

The plaintiff testified: "I went upstairs and I looked around to see if my husband was there, and he wasn't there, and I turned around, and I pushed the door open . . . and walked down two or three stairs and that is all I could remember; I just fell down, and I found myself at the bottom of the stairs."

The steps were wet and slippery, and were not protected by safety treads. Numerous persons had fallen down the stairs before, and the defendants had posted a warning sign.

The defendants do not seriously deny that these facts were sufficient to justify a finding that the staircase was negligently constructed and maintained, but say that their motion for a directed verdict should have been granted because the plaintiff had full knowledge of the condition of the premises, that her conduct was negligent, and that she assumed the risk.

Since the plaintiff fell "head first" at the top of the stairway, it could be found that the slippery condition of the stairs together with the difference in height between the first and second riser caused her accident. She knew the stairs were wet, but she did not know that the risers were of unequal height, and "the doctrine of assumed risk is everywhere subject to the limitation that it does not bar recovery for damages suffered as the result of encountering a hazard of which the injured party had knowledge and another of which he was ignorant. *Kruger* v. *Company*, 84 N. H. 290, 295, and authorities cited." *Vidal* v. *Errol, ante*, 1, 7.

For the same reason the defendants' requests for instructions were properly denied.

The plaintiff stated that she was careful when she "started to come down." She was not obliged to take every available precaution to

prevent the accident. *Barrett* v. *Company*, 85 N. H. 33, 35. And the fact that she failed to make use of the handrail, though aware that the stairs were wet and "might be slippery," was merely one of various circumstances to be considered on the issue of her care. *Boody* v. *Company*, 77 N. H. 208, 214. That issue was for the jury.

The plaintiff claimed to recover on the broad ground that the stairs were improperly constructed and negligently maintained. One Swanberg, an expert, testified categorically that the construction was not proper and supplemented his opinion with an enumeration of specific defects. The defendants contend that this testimony was inadmissible, because "it involved the issue upon which the question of defendants' liability rested." This contention is without merit. Opinion evidence, if found by the trial court to be of aid to the jury, is admissible even if it bears "directly upon a main issue." *Higgins* v. *Carroll*, *ante*, 312, 315.

When asked to give his reason for concluding that the swinging doors were improperly constructed, Swanberg testified: "It [the door] swings right over this hand rail, and swings over the top step; you cannot reach the hand rail until you have taken a step down."

Thereupon, defendants' counsel interposed: "I want a special objection to that; it must be immaterial when a person does not look for the hand rail; doesn't make any attempt to get hold of it, whether the doors are there or not."

The presiding justice permitted the evidence to stand subject to exception, and instructed the jury that they might consider the plaintiff's failure to use the handrail on the issue of contributory negligence. The evidence was properly received.

While the plaintiff admitted that she failed to look for the handrail when going up the stairs, she repeatedly declared that she had no chance to look for it or get to it when coming down. One of the defendants' experts testified: "If you went through the center, the door would clear you . . . . If you went through one side you would have to hold the door open until you went down the first step."

. The defendants' objection to the evidence in question was based upon the proposition that the plaintiff's admission that she "didn't look for any rail" took the question of the adequacy of the handrail out of the case. But the defendants still relied upon it to charge the plaintiff with contributory negligence. This put its character squarely in issue. Consequently, any evidence that tended to show that the railing was inadequate or that it was so located that the average person might not take hold of it was admissible.

Although the plaintiff may have been careless in failing to look for a rail, that carelessness would not be causal if a reasonably careful look would not have disclosed the railing. And while it may have been a negligent attitude to hold rails in contempt (she testified, "I never take hold of a rail, and I never would do it then, either"), if the mechanics of getting by the swing of the doors was such that the ordinary man would not have taken hold of the rail before slipping on the second step, such attitude would not be the legal cause of the fall. Granting that the rail may have been within the plaintiff's reach after she had taken "a step down," it by no means follows that it was so accessible that every prudent person would then have taken hold of it. Assuming, too, that the construction described would not have prevented the plaintiff from grasping the rail instinctively as she fell, there remains the question whether the situation was not such that one's instincts would not be awake to an invitation to safety.

Swanberg further testified that when he was inspecting the premises he "got a glare of the light" as he came through the swinging doors, and "it seemed to throw a shadow" on the top steps. The defendants excepted to the admission of this evidence on the ground that the plaintiff herself made no claim that there was any trouble with the lights. The plaintiff's statement to this effect was elicited on cross-examination and followed an inquiry as to whether the place seemed well lighted when she entered the street door. She had already testified that she "didn't notice any lights there." Fairly interpreted, her testimony meant no more than that she was not consciously aware of any defect in the lights which caused her to fall. But even if the testimony could be construed with equal fairness as an admission that no shadow was cast upon the top of the stairs, the rule of *Harlow* v. *Leclair*, 82 N. H. 506, would be inapplicable, for the plaintiff was entitled, in view of the two possible interpretations, to have the case considered on the one more favorable to her. *Seaver* v. *Railway*, 78 N. H. 584.

Although Swanberg admitted on cross-examination that he paid no attention to the position of the lights in the stairway, he did not retract his earlier statement that there was a shadow on the top steps. The reference by plaintiff's counsel to this shadow in his argument to the jury was therefore unobjectionable.

*Judgment on the verdict.*

WOODBURY, J., did not sit: the others concurred.