Hillsborough, } No. 3217.
Feb. 4, 1941. }

Athanasios Papakalos *v.* Athan Shaka.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Langdell* orally), for the plaintiff.

*McLane, Davis & Carleton* (*Mr. Carleton* orally), for the defendant.

WOODBURY, J.  The defendant does not deny that the stairs were defective, but contends that the plaintiff is barred from recovery for four reasons.  These are, first, that the defendant had not retained control of the stairway and so was under no duty with respect to it, second, that since the plaintiff, in consideration of a reduced rental, had agreed to take the premises in a condition which he knew was dangerous he "absolved the defendant from liability for injuries resulting from such condition," third, that the plaintiff had assumed the risk, and fourth, that the evidence establishes conclusively that the plaintiff was guilty of contributory negligence.

The defendant's first contention to the effect that he was under no duty with respect to the stairway because he had not retained it in his control is based primarily upon the evidence that the plaintiff was the only occupant of any of the tenements, and so was the only person having any occasion to use the stairs, and upon the evidence that the plaintiff customarily bolted the outside door at the foot of the stairs when he went to bed and said that he could, had he chosen, have bolted that outside door whenever he wished.  This evidence fails to indicate that the plaintiff was in full control of all the tenements in the building.  The evidence establishes that at the time of his fall he rented from the defendant only the rooms in which he actually lived and the fact that no one else then lived in the building did not give him any right to occupy or control any of the vacant tenements.  They remained in the control of the defendant.  Neither can it be found that the plaintiff was in control of all the tenements because he controlled the only toilet facilities in the building.  While it may be unlikely that anyone could be found who would be willing to live in a place without access to running water, it is possible that such persons might be found, and it is also possible that the defendant, as he had done on a previous occasion as will appear hereafter, could have worked out some arrangement

whereby other tenants in the building could use the facilities in the plaintiff's tenement. Furthermore, the evidence that the defendant at various times made unsuccessful attempts to rent vacant tenements to other persons indicates that he did not consider the plaintiff to be in sole control of the entire part of the building used for living purposes. The situation is not changed by the evidence that the plaintiff bolted the outside door because he testified that he did so only because he was the only occupant of any of the tenements and would not have done so had others lived on the upper floors of the building. The fact that at the time of his injury the plaintiff was the only tenant actually living in the building did not give him full control of the stairs leading to his and the other tenements. They were a part of the premises which the defendant furnished for the general use of such tenants as he might have and so he was under a duty to use ordinary care to keep them in reasonably safe condition for any use which "might be found to be contemplated." *Saad* v. *Papageorge*, 82 N. H. 294, 296; *Gobrecht* v. *Beckwith*, 82 N. H. 415.

The defendant in support of his second contention does not argue that he was under no duty toward the plaintiff with respect to the stairs but asserts that the plaintiff by his conduct had relieved him of that duty. There is no evidence of any explicit agreement whereby the plaintiff undertook to exonerate the defendant from liability in case he should be injured as a result of the defective condition of the stairway, but the defendant seeks to infer such an agreement from the evidence of his dealings with plaintiff. This evidence is that during 1934, 1935, and part of 1936, one Bucio rented the tenement in which the plaintiff later lived and that during those years the plaintiff lived in another tenement in the building, having access to the toilet facilities in Bucio's tenement under an arrangement negotiated by the defendant. Early in 1936, both the plaintiff and Bucio moved out of the building. Some six months later the plaintiff moved back in again, this time into the rooms formerly occupied by Bucio, upon the strength of the defendant's promise to repair. But, in the words of the plaintiff, "Mr. Shaka fooled me, he told me the place all fixed. . . . He told me the place nice and fixed, and I moved back, and the first thing I knew, I find the place the same way as it was before." As a result the plaintiff complained, and, to quote again from his testimony, told the defendant, "I am going to move; he said 'No, I am going to fix the place, and you pay me four and as long as I don't fix, you pay me three.'" The plaintiff agreed to this and the defendant, not having made any repairs up to the time of the

accident, received from the plaintiff up to that time only three dollars per month rent.

While this evidence indicates that the plaintiff agreed not to move in spite of the defendant's failure to live up to his agreement to repair, it is doubtful if, fairly construed, it shows that in addition the plaintiff agreed to forego any right of action for personal injuries which might accrue to him by reason of the defendant's failure to maintain the common stairway in reasonably safe and suitable condition. But however this may be, the whole answer to this contention of the defendant is to be found in our rule that one may not by contract relieve himself from the consequences of the future non-performance of his common-law duty to exercise ordinary care. *Conn* v. *Company*, 79 N. H. 450; *Wessman* v. *Railroad*, 84 N. H. 475, 478, 479 and cases cited.

The defendant's third contention to the effect that the plaintiff had assumed the risk is based upon the opinion of this court in *Goldstein* v. *Corporation*, 86 N. H. 402. In that case the plaintiff was seeking compensation for injuries which she sustained when she fell down a flight of stairs leading to the defendant's bowling alleys, and we held, citing *Kruger* v. *Company*, 84 N. H. 290, 295 and *Vidal* v. *Errol*, 86 N. H. 1, 7, that since she fell as a result of encountering a hazard of which she had knowledge and another of which she was ignorant the doctrine of the assumption of the risk could not be invoked to defeat her recovery. From this the defendant argues that we have held that the doctrine of the assumption of the risk is applicable in actions of tort for personal injuries brought by a tenant against his landlord. The argument is fallacious. We have repeatedly held that the doctrine of the assumption of the risk is confined to common-law actions by an employee against his master (*Vidal* v. *Errol*, 86 N. H. 1; *Ghilain* v. *Couture*, 86 N. H. 117, 120, and cases cited, *Williamson* v. *Company*, 89 N. H. 216), and we did not intend in the *Goldstein* case to cast any doubt upon that holding. In the case last cited we disposed of the argument that the plaintiff had assumed the risk by saying that she had not done so when we might as well have disposed of that argument, as we do here, by saying that it has no application in cases of the sort here under consideration.

The question of the plaintiff's contributory negligence remains to be considered. It appears that during the two periods of his tenancy the plaintiff had been over the stairs a great many times and that he was fully aware of the nature of their defects. Never-

theless at the time of his fall he was attempting to grope his way down them in pitch darkness. Somewhat similar conduct on the part of the plaintiff in the case of *Heidenreich* v. *Dumas*, 88 N. H. 453, we held to be negligent as a matter of law but that case is readily distinguishable from this one. In it the plaintiff opened an unmarked door in the kitchen of a restaurant in which he was dining and stepped into complete darkness beyond, under the impression that he was entering the toilet. Instead he had opened a door leading to the cellar and in consequence he fell down stairs. He had never been to the toilet in this restaurant before, he had not asked anyone where it was, he simply assumed that the toilet was where he thought it was because he had seen other diners go into the kitchen, he thought for the purpose of going to the toilet, and so he stepped through a door into darkness without feeling or inquiring for a light.

In the case at bar the plaintiff knew all about the location and condition of the stairs and he was compelled to use them as long as he lived where he did. He had no other means of ingress or egress. When he started down the stairs he was not blindly venturing into the unknown but was attempting to circumvent dangers of which he knew. To be sure he voluntarily encountered a known risk, but whether or not, under all the circumstances, it was negligent for him to have done so (*Kambour* v. *Railroad*, 77 N. H. 33, 49 and cases cited; *Owen* v. *Hospital*, 82 N. H. 497), presents in our opinion a question of fact for the jury.

The defendant further suggests that we overrule the cases of *Gobrecht* v. *Beckwith*, 82 N. H. 415; *Berthiaume* v. *Kessler*, 86 N. H. 305, and *Douglas* v. *Hollis*, 86 N. H. 578, and now hold that a landlord's duty to his tenants with respect to common passageways is fulfilled if he maintains them in the condition in which they were at the time when the tenancy began. This question has been fully considered in recent years in the cases cited above. We see no reason either to doubt the correctness of the result which they reach or to recapitulate the reasoning upon which that result is based.

In accordance with the agreement of the parties there must be

*Judgment for the plaintiff.*

All concurred.