Rockingham, } No. 3302.
Jan. 6, 1942. }

PAUL S. LAPERLE *v.* CHARLES A. SWANSON.

*William H. Sleeper* (by brief and orally), for the plaintiff.

*Waldron & Boynton* (*Mr. Waldron* orally), for the defendant.

BRANCH, J. 1. The defendant argues that the plaintiff is barred from recovery by his own fault. The contention is that he drove over a frost heave at a speed of fifteen to twenty miles per hour and that the frost heave caused the skid which, in turn, caused the accident. It cannot be said, as a matter of law, that the frost heave rendered a speed of fifteen to twenty miles per hour excessive, and the question of the plaintiff's due care was submitted to the jury under proper instructions. This exception is, therefore, overruled.

2. The accident happened upon February 10, 1940. The plaintiff offered in evidence a photograph taken upon March 9, 1940, for the purpose of showing the frost heave in question. A witness sufficiently identified it as "a fair representation of the way it looked on this Sunday in February, the day after the accident" and there was no error in the ruling admitting it.

3. While discussing the position of the parties on the road immediately before the accident, counsel for the plaintiff argued as follows: "*Mr. Sleeper:* I argue to you twelve men that it was two hundred feet up there in all probability to the place where this witness here on the front seat says that he saw that car in trouble. *Mr. Waldron:* May I object, Your Honor? *Court:* Exception noted. *Mr. Sleeper:* These are his exact words, 'I can't be sure if I was in the intersection or not, it was between the time that I rounded the curve and I just saw him, I might have been a little ways before the intersection, I might have been a couple of feet on the other side of the intersection, I don't know exactly where. Q. Well it would be substantially at the intersection then, that is, — A. It must have been around there. Q. Because two feet one side or the other would be very little? A. Well it might have been right around there.' Now that is where he placed himself when he testified the first time in Court. Right about in there. . . . *Mr. Waldron:* I object to the conclusion. *Mr. Sleeper:* I argue this to you as twelve reasonable men that it probably wasn't far from the point. *Mr. Waldron:* I understand I have an exception?"

The long answer above quoted followed testimony of the defendant as follows: "Where were you with reference to the intersection when you noticed that the LaPerle, the on-coming car, had been straightened out? A. Well probably a hundred fifty feet," and was given in answer to the following question: "Q. On which side of the intersection? . . . Where were you with reference to the center point of that area of intersection . . . when you noticed that the LaPerle car had straightened out?"

The defendant complains that in the argument above quoted, "Plaintiff's counsel has lifted the defendant's answer out of its context and used it to prove that the plaintiff was still in the skid when the defendant was at the intersection." It is also argued that the plaintiff thus claimed that "The defendant was at or near the intersection when he saw the plaintiff still in trouble. Whereas, in fact, the testimony read related to the defendant's position at a time after the plaintiff had got out of his first trouble."

If, at the point vaguely described in the long answer above quoted, the defendant saw the ending of a skid, it was not illogical to argue, in view of the fact that the defendant's car was in motion, "that right about in there" he saw the other car in trouble. In other words, it was fair argument that the plaintiff "was still in the skid when the defendant was at the intersection." The evidence quoted furnished substantial support to the argument made.

It is argued, however, that it was unfair to use the defendant's "exact words" in support of this argument, since the words quoted purported to have reference to the time when "the LaPerle car had straightened out" and not to the time when "he saw that car in trouble." This argument is not now available to the defendant. His only exception was "to the conclusion." This gave the trial court no information of the defendant's present claim that the argument was based on an unfair use of the testimony, and afforded no chance for a correction of the possible error at that time. For these reasons defendant's exception to the allowance of the argument must be overruled.

4. After referring to the testimony of a passenger in the defendant's car that his average speed before the accident was between twenty-five and thirty miles per hour, plaintiff's counsel argued as follows: "Now that is average speed but if an average speed was that, isn't it quite possible that he may have had to go slower back along perhaps where it was thickly settled along the way and that here as he came down through the dark there and ran through the country there with more than seventy miles yet to go late at night to get up to Ossipee that he was going faster than that? In order to get an average, twenty-five, twenty-five to thirty. *Mr. Waldron:* I want to object to that line of argument. *Court:* Exception noted."

The argument that if the defendant's average speed was twenty-five to thirty miles per hour he must have exceeded this speed at some places, was not improper, and whether he was going faster than that at the scene of the accident was a question for the jury. The

fact that some witnesses testified that the defendant's speed was less than the average above stated immediately before the accident, does not render this argument erroneous as a matter of law nor require that the verdict be set aside.

5. The defendant filed two requests for instructions purporting to apply the emergency doctrine. The court told the jury that there was such a doctrine but that it did not apply to this case. An examination of the record indicates that this ruling was correct and defendant's exception to the denial of these requests is, therefore, overruled.

*Judgment on the verdict.*

ALLEN, C. J., was absent: the others concurred.

Rockingham, Jan. 6, 1942. } No. 3297.