Hillsborough, Feb. 5, 1946. } No. 3561.

MELVINA L. AYERS *v.* BESSIE W. GORDON.

*Robert E. Earley* (by brief), for the plaintiff.

*Karl E. Dowd* (by brief), for the defendant.

Burque, J. There can be no doubt that the platform and clotheslines were furnished the plaintiff and another tenant for the common use of both. The evidence further discloses that the defendant retained control of the roof, platform and clotheslines. In fact it was conceded during the trial that defendant retained control of the premises. This imposed upon her "a duty to use ordinary care to keep them in reasonably safe condition for any use which 'might be found to be contemplated.'" *Papakalos* v. *Shaka*, 91 N. H. 265, 267, and cases cited.

Defendant's own carpenter testified that the platform, immediately after the accident, was "in very poor condition," that it was constructed of "poor material" and that "the floor joists were too far apart." Where they should have been sixteen to eighteen inches apart, a lot of them were three feet or more apart. Two boards were found broken. This is sufficient evidence to sustain plaintiff's claim of defective condition, and that she was injured by reason thereof.

Defendant stated as grounds relied upon for her motions for nonsuit and directed verdict: "that as a matter of law plaintiff knew of the condition of the premises and was contributorily negligent; that either the premises were safe or they were not readily to be found to be unsafe so as to notify the landlord, or they were unsafe and the plaintiff knew it, and in using them was negligent."

The defense of contributory negligence raises a question of fact for the jury. *Halley* v. *Brown*, 92 N. H. 1, 3; *LaPerle* v. *Swanson*, 92 N. H. 5, 6; *Papakalos* v. *Shaka, supra*, 269. Plaintiff testified she knew part of the platform was defective, but that she did not use that part. The part she used appeared safe; there was nothing to indicate

it was not safe. Outside of its being weatherbeaten, it appeared safe, as disclosed to the defendant by inspection shortly before the accident. Defendant's own carpenter, hired shortly after the accident, for the purpose of keeping the premises in good repair, testified some of the boards he replaced after the accident were "rotten," because of "two moistures, one on top and one underneath. The dampness will make them rot underneath quicker than it will on top," a fact of course which could not be known to the plaintiff, and knowledge of which is chargeable to the defendant, particularly in view of her observation that the boards were "weatherbeaten." Plaintiff testified she was careful in using the platform, and in the absence of any evidence to the contrary the jury could find she was.

If we may understand that defendant undertook, by the language used in her motion for nonsuit, to raise the question of assumption of risk, we may easily dispose of this contention, by reference again to *Papakalos* v. *Shaka, supra,* 268, where it is definitely settled that the doctrine of assumption of risk is confined to common-law actions by an employee against his master, and has no application in landlord and tenant cases.

In the absence of specific findings as to the grounds alleged in the motion to set aside the verdict, the general denial assumes denial of all grounds stated, and the defendant takes nothing by her exception. The motion to set aside the verdict as against the law and the evidence presented no question not saved by special exceptions taken seasonably during the trial, (*Shea* v. *Manchester*, 89 N. H. 547, 549, and cases cited). *State* v. *Proctor*, 91 N. H. 347.

The only other exception we find in the record is to the Court's ruling as to the qualifications of the carpenter who testified for the plaintiff. The Court's ruling implies a favorable finding of qualification as an expert, and is not exceptionable. *State* v. *White*, 91 N. H. 109, 114; *Weiss* v. *Wasserman*, 91 N. H. 164, 166; *Dowling* v. *Shattuck*, 91 N. H. 234, 236, and cases cited.

*Judgment on the verdict.*

All concurred.