132

Hillsborough,
No. 5897.

SHAER SHOE CORPORATION
d/b/a MYRNA SHOE COMPANY

*v.*

GRANITE STATE ALARM, INC.

February 27, 1970.

*Sheehan, Phinney, Bass & Green* and *Joseph F. Devan* ( *Mr. Devan* orally ), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls* and *William H. Kelley* ( *Mr. Kelley* orally ), for the defendant.

GRIMES, J.  Action in assumpsit and a count in negligence

arising out of a contract between the parties relating to a water flowage alarm system on the premises of the plaintiff. All questions of law raised by defendant's motion to dismiss were transferred without ruling by *Leahy*, C. J. on an agreed statement of facts.

The defendant is in the business of installing and maintaining a "Central Station Signal System" by which it provides super-vision of automatic sprinkler systems. Part of its service is to notify the fire department when its device installed in the sprinkler system of the customer signals that water is flowing. The plaintiff subscribed to the service on April 21, 1961 at an annual charge of $540.50. It is claimed by plaintiff that on July 13, 1963 de-fendant received an alarm indicating water flow at the plaintiff's premises but directed the fire department to another location, and that the firemen, upon arrival at the wrong location and discover-ing nothing wrong, made inquiry of the defendant and were directed to the plaintiff's premises. It is for damage done due to this period of alleged delay that plaintiff seeks damages. The plaintiff was paid for its loss under a fire policy.

The contract between the parties contains the following Clause 13: "The Contractor does not represent that its alarm system may not be circumvented or will in all cases provide the pro-tection for which it is installed. It is agreed that the Contractor is not an insurer and that the amounts payable to the Contractor as hereinabove provided are not sufficient to warrant its assuming the risk of consequential or other damage to the Subscriber as a result of a failure of the Contractor to perform any of its obligations hereunder. Accordingly, the Contractor shall be under no liability to the Subscriber for any such failure, except in the case of wilful default or negligence on the Contractor's part, and in such case its liability shall be limited to refunding the amounts theretofore paid by the Subscriber under this agreement. No claim by the Subscriber against the Contractor shall be assignable by operation of law or otherwise, nor be available to any other person by way of subrogation."

The defendant bases its motion to dismiss on the grounds ( 1 ) that the action, being a subrogation action is barred by Clause 13, and ( 2 ) that Clause 13 limits damages to the amounts paid in annual charges.

Clause 13 does not purport to exempt the defendant entirely

from liability for the consequences of negligence, but rather to limit the amount of recovery to the amount paid by Shaer for the service. However, the limitation on damages is not phrased in the usual terms of liquidated damages which set a specific amount. Instead, an upper limit is set, but damages within that limit must be proved. Also under this particular provision, there is no question of a foreiture because damages must be proved before there can be recovery within the limit.

No case involving this precise language has been cited by counsel and we have found none. In the cases found involving contracts for fire protection systems, the contract provisions all provided not only for limitation on damages but fixed the damage at an amount certain or as a percentage of the service charge. In all these cases, the validity of the provision was up-held on the basis of liquidated damages. *Atkinson* v. *Pacific Fire Extinguisher Co.*, 40 Cal. 2d 192, 253 P. 2d 18; *American Dist. Tel. Co.* v. *Roberts & Son*, 219 Ala. 595, 122 So. 837; *Schepps* v. *American Dist. Tel. Co.*, 286 S. W. 2d 684 ( Tex. Civ. App. 1955 ); *Better Food Markets* v. *American Dist. Tel. Co.,* 40 Cal. 2d 179, 253 P. 2d 10. *See* Annot. 42 A. L. R. 2d 591.

If the defendant in this case could have entirely exempted itself from liability, then it would necessarily follow that it can limit the amount of recovery.

It has been stated that this state follows a minority rule which holds invalid contracts exempting a person from liability for the consequence of his own negligence. *Ahern* v. *Roux*, 96 N. H. 71, 73, 69 A. 2d 701. Cases applying this rule have generally involved landlord-tenant relationships or common carriers. *See Conn* v. *Manchester Amusement Co.,* 79 N. H. 450, 111 A. 339; *Papakalos* v. *Shaka*, 91 N. H. 265, 18 A. 2d 377; *Wessman* v. *Boston & Maine R.R.,* 84 N. H. 475, 152 A. 476 and cases cited; *Nashua Gummed & Coated Paper Co.* v. *Noyes Buick Co.,* 93 N. H. 348, 41 A. 2d 920. In both *Nashua Gummed & Coated Paper Co.* v. *Noyes Buick Co.* and *Ahern* v. *Roux,* both *supra,* the question whether our rule has been "too broadly phrased" was raised but not decided. In *Bernardi Greater Shows Inc.* v. *Boston & Maine R.R.,* 89 N. H. 490, 1 A. 2d 360, an exculpatory clause in a contract was upheld because the railroad was contract-ing as a private and not as a common carrier and the parties were said to be free to make their own contract. This case

indicates that our rule does not prohibit all exculpatory contracts.

We do not need to decide whether our rule should continue to apply in cases involving the special relationships such as are involved in landlord and tenant and common carrier cases because no such special relationship exists here. Each party was free to make his own bargain. Under these circumstances, a contract which fully exculpated the defendant for property damage due to its negligence in the performance of the contract would be valid and enforceable. It follows that Clause 13 which limited the damages recoverable for such negligence is also valid.

Defendant contends that the real party in interest is the insurance company which paid Shaer Shoe Corporation for the damage done and that such an action is barred by Clause 13 which makes any claim of the subscriber unassignable and un-available "to any other person by way of subrogation." We disagree with this contention.

The Uniform New Hampshire Fire Insurance Policy form has been referred to in both briefs without objection. A provision dictated by RSA 407:22 appears on the policy which permits but does not compel the company to subrogate itself to the rights of the insured by assignment. The standard policy in use at the time also contained a provision entitled "Subrogation Clause" which reads as follows: "This insurance shall not be invalidated should the Insured waive in writing prior to a loss any or all right of recovery against any party, for loss occurring to the property described herein." It also contains clauses providing for reduced premiums if automatic sprinkler systems and auto-matic fire alarm systems are installed. The contract between Shaer and the defendant contained a provision that if the name of an underwriter which allowed credits in its rates was filed with the defendant, it would comply with any requirements of that underwriter as to installation and service.

Considering the contracts together, it appears that each was entered into in contemplation of the other. Although the insurer had a right to subrogation, this right could be waived. *See* cases collected in Annot. 16 A. L. R. 2d 1269, 1272, and later case service; 44 Am. Jur. 2d Insurance, *s.* 1825.

We hold that the clause in the policy entitled "Subrogation Clause" quoted above permitted the insurer's subrogation rights to be defeated to the extent, but only to the extent, that Shaer,

prior to the loss, had released the defendant from liability. It follows that the insurer may be subrogated to the claim of the insured for damages limited by Clause 13 to the amount paid for the alarm service.

*Remanded.*

All concurred.