United States District Court for
  the District of New Hampshire
No. 7843

LEO J. CAILLER

v.

HUMBLE OIL AND REFINING COMPANY & a.

October 31, 1977

*Sheehan, Phinney, Bass & Green,* of Manchester, and *W. Michael Dunn* and *Calderwood, Ouellette & Hallisey,* of Dover (*Mr. Dunn* and *Mr. Dennis L. Hallisey* orally), for Leo J. Cailler.

*Wiggin & Nourie,* of Manchester, and *W. Wright Danenbarger* (*Mr. Danenbarger* orally), for Humble Oil & Refining Company.

*Devine, Millimet, Stahl & Branch,* of Manchester, and *Richard E. Galway* (*Mr. Galway* orally), for Fireman's Fund American Insurance Companies.

GRIMES, J.   The United States District Court for the District of New Hampshire has certified under our rule 20 the following questions:

> 1) Do the provisions of the lease between Cailler and Humble, in particular paragraphs 3 and/or 5, as a matter of law bar Cailler's action in whole or in part?
>
> 2) Does Humble have a cause of action against Cailler for indemnity under the lease, particularly paragraphs 3 and/or 5?

These questions were certified on an agreed statement of facts which are set forth in toto as follows:

> This is an action for personal injuries allegedly suffered by Leo Cailler on August 11, 1972, when he put his hand through the glass portion of an interior door of a service station located in Concord, New Hampshire. Pursuant to the attached lease dated December 1, 1971, Leo Cailler had leased the premises from defendant Humble and at the time of the alleged accident was operating a general service station business from the leased premises. From 1963 until approximately 1968 Cailler had been a previous lessee of Humble with respect to a station located on Pleasant Street in Concord, New Hampshire.

Cailler has also been a railroad fireman, bakery route salesman, owner of a restaurant, computer operator, special deputy United States Marshall and special deputy sheriff. Before signing the lease of December 1, 1971, Cailler went over the lease with a representative of Humble and read it over himself. Upon taking over the station in question, Cailler obtained the attached garage liability policy with limits of $100,000 per person and $300,000 per occurrence. As of December 1, 1971, Humble had ninty-nine [sic] attorneys in its employ and several thousand stations under lease to dealers. The station in question was constructed by the third party defendant Mitchell & Hicks in 1963 and was purchased by defendant Humble in 1964. Plaintiff's allegations in negligence, warranty and strict liability are contained in the attached complaint, civil action no. C 75-119 which has been amended by the attached motion dated February 3, 1977. Pursuant to the attached third party complaint, Humble brought an action for indemnity against Cailler based on alleged rights of indemnity contained in said lease. At the time of the accident, Cailler was insured by Fireman's Fund under the above garage liability policy with limits of $100,000 per person and $300,000 per occurrence.

Cailler's multi-count complaint in the district court alleges that the station was defective in design and manufacture in that the glass in an interior door leading from the office to the bay area was approximately one-eighth of an inch thick with an area of about ten square feet and that no protective devices were provided and no warnings were given.

Clause 3 of the lease provided in part that the lessee agrees:

C. To keep the premises including buildings . . . free of all . . . dangerous conditions.

F. To make no additions or alterations to the structure of the buildings . . . without the written permission of Humble . . . .

Clause 5 of the lease provided as follows:

Lessee accepts the leased premises, appurtenances and all building improvements and equipment without any

warranty by Humble at any time, express or implied, as to their condition or fitness for any purpose; and Lessee assumes the risk of and sole responsibility for and hereby agrees to indemnify and save harmless Humble from any and all claims for injuries, death, loss and damage of any kind or character, to person or property, by whomsoever , suffered or asserted, resulting from or arising out of the condition or use of the leased premises, appurtenances and all buildings, improvements and equipment during the term of this lease or any renewal or extension thereof, and whether due to any latent or patent defect, Humble's negligence or otherwise, except, however, when Lessee shall have given Humble written notice of the existence of a defective condition for the repair of which Humble is responsible under this lease and shall have taken all reasonable precautions to prevent the occurrence of any injuries, death, loss and damage attributable solely and directly to such defective condition.

Cailler contends that the lessor cannot exculpate itself from liability for its negligence to him and that the provisions of the lease purporting to do so should be declared void.

■ Our rule, which has been referred to as a minority rule, does prohibit some exculpatory contracts. *Shaer Shoe Corporation v. Granite State Alarm, Inc.*, 110 N.H. 132, 262 A.2d 285 (1970). Even when applicable, the rule has been stated that "one may not by contract relieve himself from the consequences of the *future* non-performance of his common-law duty to exercise ordinary care." (Emphasis added.) *Papakalos v. Shaka*, 91 N.H. 265, 268, 18 A.2d 377, 379 (1941); *cf. Wessman v. Railroad*, 84 N.H. 475, 478, 152 A. 476, 478 (1930) ("consequences of the non-performance of his common-law duty . . . ."). In the instant case, we need not consider the effect of this rule on Humble's exculpation clause, because there was no duty to exculpate. Unlike the situation in *Papakalos*, the accident did not occur on a part of the premises over which the lessor retained control or otherwise as to which he had the duty at common law to use reasonable care to keep in reasonably safe condition. *See Sargent v. Ross*, 113 N.H. 388, 392, 308 A.2d 528, 534 (1973). Rather the accident occurred on a part of the leased premises over which the lessee had exclusive control and as to which at common law the owner owed no duty in the ab-

sence of "warranty or deceit or fraud." *Marston v. Andler,* 80 N.H. 564, 122 A. 329 (1923). As the facts that gave rise to this case occurred before our decision in *Sargent,* which abrogated the control test and imposed reasonable care duties on landlords, there is no need to consider the extent of Humble's present duties to the plaintiff.

The case before us also differs from *Weaver v. American Oil Co.,* 276 N.E.2d 144 (Ind. 1971), relied on by Cailler because that case involved the negligence of an employee of the lessor who was on the premises delivering gasoline after the execution of the lease. This would of course qualify as nonperformance of a common-law duty under our rule. However, that case recognized the validity of exculpatory clauses when fairly entered into. The court in *Weaver* struck down the clause because of the unfair circumstances under which the lessee signed the lease.

■ Cailler further argues that the exculpatory clause should be declared void in this case because there was unequal bargaining power between the parties and because the clause is unconscionable in nature. Nothing in the agreed statement of facts indicates any unequal bargaining power between the parties. Difference in size is not to be equated per se with difference in the power to bargain. There are no facts that indicate a shortage of alternative rental properties or long occupation and substantial investment that might have created pressures on a businessman of specialized skills akin to those on a lessee of residential property, which is needed for shelter, one of the necessities of life. Cailler had rented another gas station from Humble for four years ending in 1968. It does not appear what he did between 1968 and 1971 when the lease in question was executed, nor is there anything which tends to show that he was under any pressure or compulsion to enter into the lease. It appears here that in fact each party was free to make his own bargain. *Shaer Shoe Corporation v. Granite State Alarm, Inc.,* 110 N.H. 132, 262 A.2d 285 (1970).

■ Nor do we find the clauses to be unconscionable per se. Before signing the lease, Cailler went over it with a Humble representative and read it over himself. The clauses in question are written in plain language and not in smaller print than the rest of the thirteen clauses. The case therefore differs greatly from *Weaver v. American Oil Co.,* 276 N.E.2d 144 (Ind. 1971), where the contract

was put before the lessee and he was told to "sign it" without his reading it or having it explained to him.

The answer to the first certified question is "yes"; clauses 3 and 5 bar Cailler's action. It is unnecessary to answer the second certified question in view of the answer to the first.

*Remanded.*

Bois, J., did not sit; Kenison, C.J., dissented; the others concurred.