Rockingham
No. 84-594

## WALTER TANGUAY

v.

## PAUL MARSTON

January 6, 1986

*Thomas E. Craig* and *Elizabeth Cazden*, of Manchester (*Mr. Craig* and *Ms. Cazden* on the brief, and *Mr. Craig* orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Raymond E. Liguori* on the brief and orally), for the defendant.

KING, C.J. The plaintiff, Walter Tanguay, sued the defendant, Paul Marston, to recover for injuries sustained during the course of the plaintiff's employment with North East Cartage Co., Inc. (NEC). The defendant was NEC's president and principal shareholder. The superior court granted the defendant's motion for summary judgment, and the plaintiff appealed. We reverse.

The plaintiff was injured on NEC's business premises on June 10, 1982, while in that company's employ. Those premises were leased by NEC from the defendant, who was the company's president and principal shareholder. The plaintiff injured himself when he slipped and fell on a patch of grease in the parking area. Following his accident, the plaintiff recovered damages for his injuries from his

employer, NEC, under the workers' compensation statute. RSA ch. 281. The present suit was filed against Paul Marston, individually, as owner of the premises. The Superior Court (*Gray*, J.) approved the Master's (*R. Peter Shapiro*, Esq.) recommendation to grant the defendant's motion for summary judgment and that judgment be entered for the defendant. The master found that the immunity granted employers under the workers' compensation statute, RSA 281:12 (Supp. 1983), barred the plaintiff's suit against the defendant.

On this appeal, we must answer three questions: (1) whether it was proper for the master to consider depositions and additional affidavits submitted by the defendant after the hearing on the motion for summary judgment; (2) whether RSA 281:12 (Supp. 1983) bars a suit against Paul Marston individually; and (3) whether an exculpation clause in the lease between the defendant and NEC bars plaintiff's suit against the defendant in his role as landowner.

## I. *Evidence Submitted Post-Hearing*

On the day of the hearing on the summary judgment motion, the defendant submitted to the master a deposition of the plaintiff. He also submitted his own affidavit, some two weeks after the hearing. The plaintiff contends that the master should not have permitted the defendant to supplement the record in this fashion.

■■ Motions for summary judgment are governed by statute. RSA 491:8-a. The procedure set out in RSA 491:8-a requires that motions be filed with supporting affidavits. RSA 491:8-a, II. However, there are no definite time limits for filing depositions in support of a motion for summary judgment. *See* RSA 491:8-a, III. This court has held that depositions need not be formally filed under RSA 517:11 with the trial court to be considered on a motion for summary judgment. *Lortie v. Bois*, 119 N.H. 72, 75, 398 A.2d 540, 542 (1979).

■ Since the statutory purpose of the summary judgment procedure is to save time, effort and expense when no genuine issue of fact exists, *Lourie v. Keene State College*, 121 N.H. 233, 235, 428 A.2d 902, 903 (1981), we allow the trial court considerable discretion procedurally in determining what affidavits, counter-affidavits and other evidence it will consider. *See Chemical Insecticide Co. v. State*, 108 N.H. 126, 229 A.2d 167 (1967).

■ In this case, the plaintiff may not claim surprise at the defendant's submission of the plaintiff's own deposition. Further, the affidavit of the defendant submitted after the date of the hearing on the motion for summary judgment likewise presented no

facts which could have surprised or worked unfairness upon the plaintiff. Accordingly, we find that the master did not abuse his discretion in considering these additional documents.

II. *Employer Immunity*

The plaintiff argues that the master improperly found as a matter of law that this suit against the defendant was barred because the defendant shared NEC's employer immunity under the workers' compensation statute. RSA 281:12 (Supp. 1983). We hold that the master erred in making this finding.

The plaintiff's employer, NEC, is a New Hampshire corporation which, under the State's business corporation statute, has the power to "sue and be sued," RSA 293-A:4, II (Supp. 1983), and to "lease, or otherwise acquire, [and] own . . . real or personal property . . . ." RSA 293-A:4, IV (Supp. 1983). By virtue of its incorporation, NEC is a separate legal entity from the defendant, Mr. Marston.

For purposes of immunity under the workers' compensation laws, we have held that partners are not separate entities from their partnership, and therefore share the partnership-employer's immunity from suit. *Swiezynski v. Civiello*, 126 N.H. 142, 489 A.2d 634 (1985). However, the analysis in the partnership context is different from the analysis with respect to corporations.

■■ An individual such as the defendant will share a corporation's employer immunity only when he is the *alter ego* of the corporation and is performing corporate responsibilities. *Estabrook v. American Hoist & Derrick, Inc.*, 127 N.H. 162, 498 A.2d 741 (1985). *See Stevens v. Lewis*, 118 N.H. 367, 369-70, 387 A.2d 637, 639 (1978). The question of whether or not an individual is a corporate *alter ego* is a question for the jury, unless the evidence would support only one finding as a matter of law. *Stevens, supra* at 370, 387 A.2d at 639.

■ In *Stevens*, we refused to hold as a matter of law that the defendant was a corporate *alter ego*, even though he was the president, treasurer, sole stockholder, and a director of the corporation. In the present case, knowing only that the defendant was president and a principal shareholder of NEC, the master erred in holding as a matter of law that the defendant was NEC's *alter ego*. There was insufficient evidence for such a conclusion.

■ Since, on this record, we cannot conclude that the defendant was NEC's *alter ego*, we also cannot conclude that he was plaintiff's employer for purposes of the workers' compensation laws, and the suit is therefore not barred by RSA 281:12 (Supp. 1983). Therefore, we need not consider whether plaintiff's employer is liable under the dual capacity doctrine. *See Quinn v. National Gypsum Co.*, 124

N.H. 418, 469 A.2d 1368 (1983); *see also Holzworth v. Fuller*, 122 N.H. 643, 644–45, 448 A.2d 394, 395 (1982) (rejecting the dual capacity analysis as to employer who is also the landowner).

III. *Landowner Liability*

■ The final issue we must consider is whether the plaintiff's suit against the defendant as a landowner is barred, where the master found that under a lease between NEC and the defendant, NEC was assigned responsibility for maintenance of the business premises. The lease provided in part that the "lessee (NEC) shall, at the lessee's own expense, comply with and maintain all safety, health and related requirements of law and with all ordinances . . . ." The lease also contained a clause which provided that NEC would indemnify the defendant for any losses the defendant incurred as a result of any unsafe conditions. We hold that such lease provisions do not bar suits against landowners by injured third parties.

■ A landlord has a duty to "exercise reasonable care not to subject others to an unreasonable risk of harm [citations omitted]. A landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." *Sargent v. Ross*, 113 N.H. 388, 397, 308 A.2d 528, 534 (1973). In the case of *Ouellette v. Blanchard*, 116 N.H. 552, 553, 364 A.2d 631, 634 (1976), the court extended the duty to use reasonable care under all of the circumstances to owners and occupiers of land.

The plaintiff argues that the defendant may not delegate, by means of the lease he signed with NEC, his duty to maintain the NEC business premises in a safe condition, citing the general rule that "one may not by contract relieve himself from the consequences of the future non-performance of his common-law duty to exercise ordinary care." *Cailler v. Humble Oil & Refining Co.*, 117 N.H. 915, 918, 379 A.2d 1253, 1255 (1977) (quoting *Papakalos v. Shaka*, 91 N.H. 265, 268, 18 A.2d 377, 379 (1941)).

■ ■ We have, however, made exceptions to the general rule that exculpatory contracts are prohibited. Where the parties to a contract are free to make their own bargain, and no special relationship (such as landlord-tenant or common carrier-passenger) exists between them, a clause fully exculpating one party for property damage due to its negligence in the performance of a contract is valid and will be enforced. *Shaer Shoe Corporation v. Granite State Alarm, Inc.*, 110 N.H. 132, 135, 262 A.2d 285, 287 (1970); *see Commercial Union Assurance Co. v. Brown Co.*, 120 N.H. 620, 625,

419 A.2d 1111, 1114 (1980) (rule against exculpatory clauses does not apply to contracts of indemnity with third parties).

We were presented with an exculpatory clause in a commercial real estate lease in *Cailler v. Humble Oil Refining Co.*, 117 N.H. 915, 379 A.2d 1253 (1977). In *Cailler* we held that we did not need to consider the effect of our rule on the lessor's exculpation clause, because there was no duty to exculpate. We held in that case that the lessor had no duty, applying the pre-*Sargent* standard to determine the lessor's liability because the lease was entered into before our decision in *Sargent*, 113 N.H. 388, 308 A.2d 528. Prior to *Sargent*, a landlord was not liable, except in certain limited situations, for injuries caused by defective or dangerous conditions in the leased premises.

In considering the issue again, we note that, as between themselves, a lessor and lessee in a lease of commercial real estate may agree on which party will maintain the leased premises and which party will be liable for injuries caused by improper failure to maintain. Both parties to the commercial lease must be free to make their own bargain. *Shaer Shoe*, 110 N.H. at 135, 262 A.2d at 287. We recognize that a lease of commercial real estate is in many ways much like any other commercial contract, where we allow the parties to assign risks and obligations between themselves. *See generally*, Glendon, *The Transformation of American Landlord-Tenant Law*, 23 B.C.L. REV. 503, 536, 557–59 (1982) (noting the difference between commercial and residential leases and arguing that they should be treated differently by courts).

While exculpatory clauses in leases of commercial real estate are binding on the parties to the lease, they have no effect on non-signers, such as the plaintiff. *See B. Shoninger v. Mann*, 219 Ill. 242, 76 N.E. 354 (1905); *Commercial Warehouse Co. v. Hyder Brothers, Inc.*, 75 N.M. 792, 411 P.2d 978 (1965). *Contra Hendrix v. Eighth and Walnut Corp.*, 1 Ohio St. 3d 205, 438 N.E.2d 1149 (1982) (lessor of commercial premises not liable to third party for death resulting from defective elevator where lessor not in control of leased premises and lessee agreed to maintain elevator). Thus, in the present case, the exculpation clause in the lease between the defendant and NEC does not bar a suit by the plaintiff against the defendant.

*Reversed and remanded.*

JOHNSON, J., did not sit; the others concurred.