Lussier v. New Meditrust Co.          CV-00-74-B     07/10/01

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Maureen Lussier and**
**Michael Lussier**

     v.                                **Civil No. 00-074-B**
                                       **2001 DNH 130**
**New Meditrust Company, LLC**



<u>**MEMORANDUM AND ORDER**</u>


     On January 18, 1997, Maureen Lussier slipped and fell on
steps at the Lakeview Neurorehabilitation Center in Effingham
Falls, New Hampshire.  Lussier and her husband, Michael, filed
suit in Carroll County Superior Court against New Meditrust
Company, LLC ("Meditrust"), the owner of the property, asserting
negligence and loss of consortium claims.  Meditrust removed the
action to this Court on the basis of diversity jurisdiction.  <u>See</u>
28 U.S.C. § 1332.  I have before me Meditrust's motion for
summary judgment.  For the reasons discussed herein, I grant its
motion.

## I. BACKGROUND[1]

Maureen Lussier was working at the time of the accident as a nurse supervisor for the Lakeview Neurorehabilitation Center ("Lakeview"). She alleges that on the evening of Saturday, January 18, 1997, she slipped on icy stairs at Lakeview and, as a result, sustained multiple injuries. She also alleges that the stairs had not been cleared of ice and snow that day, nor had they been treated with sand or salt. Neither Lakeview nor Meditrust were aware that the stairs had not been properly cleared or treated.

Pursuant to a Lease Agreement between Meditrust of New Hampshire, Inc. and Lakeview, Lakeview assumed sole responsibility for the maintenance and upkeep of the premises. Meditrust is the successor by merger to Meditrust of New Hampshire, Inc., which owned the Lakeview premises at the time of the accident.[2] The relevant portions of the Lease Agreement

---

[1] I describe the facts in the light most favorable to the Lussiers, the nonmoving party. See Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).

[2] For ease of reference I refer to both Meditrust of New Hampshire, Inc. and New Meditrust Company, LLC as Meditrust throughout this Memorandum and Order.

state:

> 8.1 <u>Maintenance and Repair</u>
> 8.1.1 <u>Lessee's Responsibility</u>.  Lessee, at its sole
> cost and expense, shall keep the Leased Property and
> all private roadways, sidewalks and curbs appurtenant
> thereto which are under Lessee's control in good order
> and repair (whether or not the need for such repairs
> occurs as a result of Lessee's use, any prior use, [or]
> the elements).
>
> 8.1.2 <u>No Lessor Obligation</u>.  Lessor shall not, under
> any circumstances, be required to ... maintain the
> Leased Property in any way (or any private roadways,
> sidewalks or curbs appurtenant thereto).

Facility Lease Agreement, Doc. No. 27, at 35-36.  The parties agree that, although not explicitly mentioned in the Lease Agreement, Lakeview was responsible for snow and ice removal on the premises.

Lakeview implemented maintenance policies and procedures for snow and ice removal but never consulted with Meditrust about these policies or asked Meditrust to assist with the snow and ice removal.  Lakeview's maintenance department is in charge of maintaining the exterior walkways and stairs at Lakeview.  The walkways leading to the bottom of and away from the top of the relevant stairs are equipped with electric coils which melt snow and ice.  The stairs, however, do not contain coils, and the

-3-

maintenance department must shovel, salt, and sand the stairs to keep them clear of ice and snow. Maintenance personnel are present on the premises from 7:30 A.M. until 4:00 P.M. Monday through Friday and remain on-call during the evening and weekend hours.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] ... may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). A material fact is one that affects the outcome of the suit. <u>See</u> <u>id.</u> at 248.

In ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-movant. <u>See</u> <u>Oliver</u>, 846 F.2d at 105. The party seeking

summary judgment, however, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the burden shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323). I apply this standard in ruling on Meditrust's motion for summary judgment.

## III. DISCUSSION

The Lussiers claim that Meditrust is liable because it negligently failed to remove snow and ice from the stairs, to warn Maureen Lussier that the stairs were icy, and to supervise Lakeview. Plaintiffs also claim that Meditrust is vicariously liable for Lakeview's negligence. I first address plaintiffs'

-5-

claims that Meditrust is liable because of its own negligence and then turn to their vicarious liability claim.

## A.    <u>Meditrust's Negligence</u>

In a 1973 decision which was thought at the time to be revolutionary but which has since become widely accepted, the New Hampshire Supreme Court rejected the common law rule that a landlord ordinarily cannot be held liable for injuries suffered by a third party while using a leased premises.  See <u>Sargent v. Ross</u>, 113 N.H. 388, 397 (1973).  Thus, the court held, "questions of control, hidden defects and common or public use, which formerly had to be established as a prerequisite to even considering the negligence of a landlord [are] now . . . relevant only inasmuch as they bear on basic tort issues such as foreseeability and unreasonableness of the particular risk of harm."  <u>Id.</u>  The court also determined in a later decision that exculpatory clauses in commercial leases cannot be enforced against third parties.  In <u>Tanguay v. Marston</u>, 127 N.H. 572 (1986), the court held that while such clauses bind both the landlord and the tenant, they do not provide the landlord with a defense to a third party's negligence claim.  See <u>id.</u> at 578.

In light of these decisions, Meditrust does not challenge the Lussiers' contention that it owed Maureen Lussier a duty to exercise "reasonable care under all the circumstances in the maintenance and operation of [its] property." Ouellette v. Blanchard, 116 N.H. 552, 557 (1976). Instead, it argues that it is not liable because it did not act unreasonably.

I agree with Meditrust that it cannot be held liable for its own alleged negligence on the present record. The Lussiers do not challenge Meditrust's claims that: (1) Lakeview leased the entire property and assumed sole responsibility for ensuring that the steps on the property were free from snow and ice; (2) Meditrust had no involvement in routine maintenance activities at the site; (3) none of Meditrust's employees knew that Lakeview had failed to keep the steps clear of snow and ice; and (4) the ice on the steps did not result from a foreseeable defect in the design or construction of the steps.

Each of these facts affects my analysis. First, while Meditrust cannot shift to Lakeview its duty to ensure that its property is reasonably safe for third parties, see Tanguay, 127 N.H. at 578, it nevertheless is significant both that Meditrust

leased the entire property to Lakeview and that Lakeview assumed the primary duty under the lease to maintain the property in a reasonably safe condition. If Maureen Lussier's accident had occurred in a common area that Meditrust possessed and controlled or if Meditrust had agreed to maintain the steps in a safe condition, its alleged negligence would present a question of fact for a jury to resolve.

Second, it is important that Meditrust did not actually involve itself in the maintenance of the facility. If it had undertaken responsibility for clearing the steps of snow and ice, it might well be liable for Maureen Lussier's injuries even though the lease purported to assign this responsibility exclusively to Lakeview.

Third, because Meditrust did not have actual notice of Lakeview's failure to maintain the steps in a safe condition, it cannot be held liable based on a failure to act on information that would have caused a reasonable landlord to correct a dangerous condition in the leased premises.

Finally, the dangerous condition that allegedly caused Maureen Lussier's injuries did not develop until after Meditrust

had relinquished possession of the property. The Lussiers do not claim that the steps were icy that day because of a defect in the design or construction of the stairs. Instead, they apparently contend that Maureen Lussier was injured because Meditrust failed to properly respond to ice and snow that accumulated on the steps as a result of a change in the weather.

A landlord's duty to use reasonable care ordinarily does not require it to detect and correct dangerous conditions on a leased premises within the tenant's exclusive control that develop because of changes in the weather. See, e.g., Sheehan v. El Johnan, Inc., 650 N.E.2d 819, 821 (Mass. App. Ct. 1995) (holding that an absentee landlord had no duty to his tenant's employee to keep the parking lot free from ice and snow where the tenant was assigned the duty under the lease for "custodial services" and the landlord was unaware of the unsafe conditions); Festa v. Waskawic, 581 N.Y.S.2d 251, 252-53 (N.Y. App. Div. 1992) (holding that a landlord was not liable for a third party's fall on an icy sidewalk where the landlord did not know of the dangerous condition and did not control the tenant's actions). Because the Lussiers have failed to identify any other theory under which

Meditrust could be found liable for its own negligence, I grant Meditrust's summary judgment motion with respect to these claims.

**B.    Vicarious Liability**

The Lussiers also argue that Meditrust should be held vicariously liable for Lakeview's alleged negligence.  They rely on Valenti v. Net Properties Management, Inc., 142 N.H. 633 (1998), to support their argument.  In Valenti, the New Hampshire Supreme Court held that an owner of a business premises who employs an independent contractor to maintain the premises remains vicariously liable for the contractor's negligence.  See id. at 636.

I reject the Lussiers' analogy to Valenti.  The court based its holding on the Restatement (Second) of Torts.  See id.  The Restatement specifies a variety of circumstances under which a landowner may be held vicariously liable for the work of an independent contractor.  See Restatement (Second) of Torts §§ 414A, 415, 419, 420, 421, 422, 425 (1965).  It does not, however, suggest that a landlord should be held vicariously liable for its tenant's negligence.  Moreover, one of the essential attributes of a lease, which differentiates it from an agreement between a

-10-

landowner and an independent contractor, is that a lease transfers the landowner's right to possess its property to the tenant during the term of the lease. See Restatement (Second) of Prop.: Landlord & Tenant § 1.2 (1977). Because a landowner loses the right to possess its property when it executes a lease, it has far less ability to oversee its tenant's maintenance activities than it does to oversee an independent contractor who is working on property within the landowner's possession. If, as the Lussiers suggest, I were to subject landlords to liability for their tenants' negligence, I would be extending the doctrine of vicarious liability in a manner contemplated by neither the New Hampshire Supreme Court nor the drafters of the Restatement (Second) of Torts. Such an extension of state common law is not an appropriate activity for a federal court.

## IV. CONCLUSION

Because I find that Meditrust was not negligent, even when I construe the facts in the light most favorable to the Lussiers,

-11-

Meditrust is entitled to judgment as a matter of law.[3]
Therefore, I grant Meditrust's motion for summary judgment, Doc. No. 15.  I direct that the clerk enter judgment in accordance with this order.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge

July 10, 2001

cc:  Dona Feeney, Esq.
     Matthew B. Cox, Esq.

---

[3]  Michael Lussier brings a loss of consortium claim arising from his wife's injuries.  Because I find that Meditrust was not negligent, Michael Lussier cannot recover for loss of consortium. See N.H. Rev. Stat. Ann. § 507:8-a (1997).  Therefore, Meditrust also is entitled to summary judgment as to this claim.