Hillsborough, } No. 3933.
Oct. 3, 1950. }

JEANNETTE M. JUTRAS & a. v. SATTERS, INC.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Langdell* orally), for the plaintiff.

*Paul E. Nourie* and *Frederick W. Branch (Mr. Branch* orally), for the defendant.

JOHNSTON, C. J. It is not disputed that the plaintiff was a business visitor and that the defendant "was bound to exercise ordinary care to protect her against dangers reasonably to be apprehended." *Roy* v. *Amoskeag Fabrics,* 93 N. H. 324, 325; *Holmes* v. *Clear Weave Stores,* 95 N. H. 478.

The defendant does argue in support of its exception that it was essential for the plaintiff to produce evidence to the effect that the method of construction used by the defendant was not in accordance with proper building practice.

If a case cannot be decided intelligently by application to the evidence of common knowledge or such as results from the experience and the observation of the ordinary jury but requires technical knowledge that comes from special experience or training, then, in the absence of such technical knowledge, the plaintiff fails to establish a case. Otherwise the jury would be deciding the case on conjecture rather than reason. "Frequently, the jury, or the court trying a case without a jury, is confronted with issues the proper understanding of which requires scientific or specialized knowledge or experience and which cannot be determined intelligently merely from the deductions made and inferences drawn on the basis of ordinary knowledge, common sense, and practical experience gained in the ordinary affairs of life." 20 Am. Jur. 647.

The case cited to support the defendant's contention for judgment is *Cozzi* v. *Hooksett*, 84 N. H. 530. In this case the statutory obligation of the defendant town was limited to maintaining a "standard rail." Since the accident in question was due to the breaking of a non-standard rail, it was stated that there could be no recovery without competent evidence that a standard rail would have prevented the accident that happened. Jurors did not possess the engineering knowledge of the strength of a fence of standard specifications.

So, in *Michael* v. *Roberts*, 91 N. H. 499, it was stated with respect to the question whether, if the plaintiff's intestate died from an embolism, anything could have been done to prevent it, "the uninformed judgment of the jury was worthless and expert testimony was essential."

However, jurors may make such inferences as are based on common knowledge or their own observation and experience of the facts of life. *Chicago Railway Company* v. *Moore*, 166 Fed. 663. The following are some of the New Hampshire cases in which it was held that expert testimony was not essential to the plaintiff's case: *Dunham* v. *Stone*, ante, 138; *Dumas* v. *Company*, 94 N. H. 484; *Mehigan* v. *Sheehan*, 94 N. H. 274.

The liability of the defendant depends upon whether it was negligent for it to maintain an abrupt drop of seven-eighths of an inch in the entrance, at a point adjoining a depression in the city walk, where it should have expected prospective customers to walk while their attention was likely to be focused upon the display window. This in turn depends upon the danger therefrom and the feasibility of preventing such a condition. Both of these factors are within such knowledge as jurors possess. The opinions of competent experts

doubtless would have been helpful, but the jury independently could intelligently decide whether there was danger from the change in level and whether the danger could have been avoided. Whether an unevenness caused by an abrupt drop of almost an inch in an entrance-way may cause a woman to turn her ankle, to lose her balance and fall is a matter within the knowledge that jurors possess. So also, in the present case it was within the province of the jury without the testimony of experts to decide whether the drop could have been avoided by a gradual slope of the entrance-way to the city sidewalk or by inducing the city before use of the entrance to raise the level of its sidewalk by the use of hot top to that of the entrance. Such repair was in fact made two or three days after the accident.

Moreover, there was opinion evidence without objection as to the qualifications of the witnesses both concerning the danger of the change in level and the practicality and desirability of repairs. Cf. *Ricard* v. *Insurance Company*, 87 N. H. 31, 34. In reply to the question, "It was necessary that that lobby be level with the public sidewalk to avoid injury to people who might be leaving your premises or going on, isn't that correct?" Mr. Satter, President and Treasurer of the defendant company, said, "Yes, Sir." The man who laid the cement work testified: "Q. Suppose you didn't cut it but it was one inch higher than the asphalt, would you leave it that way? A. No Sir, we would repair it."

By indicating a point on a photograph of the scene of the accident, the plaintiff sufficiently identified the change in levels as the place of her fall.

If the high heels, which measured two and three-quarters inches from the instep, contributed to the accident, a jury rather than a court of law must determine the wearing of such to be contributory negligence.

The motions for directed verdicts were properly denied. *Wilson* v. *Bank*, 95 N. H. 113.

*Judgment on the verdicts.*

All concurred.