## BEDELL v. DAVIS.
### No. 4691.

United States Court of Appeals
First Circuit.

Feb. 26, 1953.

Rehearing Denied March 23, 1953.

George P. Cofran, of Concord, N. H. (R. Wayne Crosby, Hillsboro, N. H., on brief), for appellant.

Margaret Quill Flynn, Boston, Mass. (Robert E. Earley and Charles J. Flynn, both of Nashua, N. H., and Cosmo A. De-Bonis, Lexington, Mass., on brief), for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of nine thousand dollars entered by the United States District Court for New Hampshire on a verdict for the plaintiff in a tort action arising out of an accident in the grease room of defendant's service station. Jurisdiction rests on diversity of citizenship. 28 U.S.C. § 1332.

The defendant owns and operates an automobile service station known as Bedell's Garage, in Hillsboro, New Hampshire. The complaint alleges that on or about October 10, 1950, the plaintiff entered the defendant's premises for the purpose of having the defendant service her automobile, and that while the defendant was doing so, the plaintiff, while in the exercise of due care, fell into a "deep and dangerous hole that was negligently, carelessly and dangerously there maintained by the defendant, who had negligently and carelessly failed to take precautions to safeguard the greasy and slippery area around the rim of the said hole."

The answer of defendant denied negligence and alleged that the plaintiff was guilty of contributory negligence.

The jury returned its verdict for plaintiff on May 29 and the court entered judgment on the verdict on June 2, 1952. The defendant's two motions for a directed verdict and one for judgment notwithstanding the verdict were denied. The denial of these motions and of certain exceptions to the charge are the basis for this appeal.

The defendant contends: (a) that there was no evidence of the defendant's negligence; (b) that the plaintiff was guilty of contributory negligence as a matter of law; and (c) that it was prejudicial error for the court to charge that the plaintiff was a business visitor.

Thus, in this diversity case, we must first decide whether or not the plaintiff was entitled to go to the jury, under the governing New Hampshire law as applied to the evidence.

At about 3:30 P.M. on October 10, 1950, the plaintiff drove to the defendant's premises to have him put antifreeze in her radiator. She parked her car on the cement areaway directly in front of the entrance to the grease room. According to her testimony, the front of her car was stopped about two to two and a half feet from the entrance.

The plaintiff remained seated at the wheel of her car and when the defendant came out, she told him that she had a quart of Zerone and asked him to winterize her car. He told her that it would be necessary for him to check his chart in order to ascertain the exact amount of Zerone she needed. The defendant left her, walked around to the front of the car, and opened up the petcock to drain the water. Then he walked into the main garage to check his chart.

At this point the plaintiff got out of the car with the quart of Zerone, put up her umbrella and walked along the left side of her car towards the grease room, which was directly in front of her. She left the quart of Zerone at the entrance, and then turned and walked in front of her car, attracted by steam coming from the radiator. As soon as she observed that the defendant had opened the petcock, it began to rain hard and the plaintiff, in order to get out of the rain stepped backwards from the cement areaway into the grease room.

The grease room is in a building 12 feet wide and 30 feet long, adjoining the main garage and facing the street. The entrance is 37 feet from the street. In the building was a grease pit 20 feet long, 3½ feet wide and 4½ to 5 feet deep. A wooden floor about 4 feet wide extended around the pit.

From this description, it appears that when the plaintiff checked her radiator, standing at the front of her car with her back to the grease pit, she was approximately 6 feet distant from the edge of the grease pit. The plaintiff testified that she was looking ahead as she walked toward the building on the left side of her car, so the pit was directly in view just a moment before she decided to back in out of the rain. She testified that she had no trouble with her eyesight. She said that she knew it was dangerous to walk backwards or step backwards at any time or place but she testified that as she got "just inside" the grease room she looked back or turned part way around to see if it was safe.

The plaintiff's testimony with respect to her caution as she backed into the building is substantially as follows: "I looked enough to see that where I wanted to step was all right, and I started to put my umbrella down. At least I thought it was all right right there * * * where I stepped was safe, I felt I could put my foot there. I looked that that was all right * * * I was very careful * * * I could see I had space enough to get back out of the rain. That was what I was interested in, getting back out of the rain." Then, according to the plaintiff's testimony, as she was starting to put her umbrella down, she "slipped and fell down into the pit backwards" after taking "one or two steps." The plaintiff says the cause of her accident is that she "slipped on some grease."

We think that the evidence before us, according to the New Hampshire cases, establishes the plaintiff's contributory negligence as a matter of law and therefore, the plaintiff was not entitled to have her case submitted to the jury.

It seems to us that the facts in this case come within the scope of the decision in Heidenreich v. Dumas, 1937, 88 N.H. 453, 190 A. 705, 706, where the court, in finding contributory negligence as a matter of law, said:

"The testimony of the plaintiff that he 'was very careful' and 'tried to find

out' cannot, in the context, be taken as factual. It was no more than an allegation, a claim, or an opinion. The rest of the testimony of the plaintiff (by which he is bound, Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973) shows that he did not try to find out, but merely stepped in. He did not ask for directions or about the light, although he had opportunity to do so. When his own counsel gave him a chance to say that he felt his way, he made no claim that he did so, but said, 'I just tried to make a step.'

"Upon his own story, the plaintiff, in spite of his assertion that he was careful, cannot be found to have exercised any care at all. On the contrary, the testimony is conclusive that he was negligent and that his negligence contributed to his injuries."

Subsequently, in Papakalos v. Shaka, 1941, 91 N.H. 265, 269, 18 A.2d 377, 379, the court said:

"The question of the plaintiff's contributory negligence remains to be considered. It appears that during the two periods of his tenancy the plaintiff had been over the stairs a great many times and that he was fully aware of the nature of their defects. Nevertheless at the time of his fall he was attempting to grope his way down them in pitch darkness. Somewhat similar conduct on the part of the plaintiff in the case of Heidenreich v. Dumas, 88 N.H. 453, 190 A. 705, we held to be negligent as a matter of law but that case is readily distinguishable from this one. In it the plaintiff opened an unmarked door in the kitchen of a restaurant in which he was dining and stepped into complete darkness beyond under the impression that he was entering the toilet. Instead he had opened a door leading to the cellar and in consequence he fell down stairs. He had never been to the toilet in this restaurant before, he had not asked anyone where it was, he simply assumed that the toilet was where he thought it was because he had seen other diners go into the kitchen, he thought for the purpose of going to the toilet, and so he stepped through a door into darkness without feeling or inquiring for a light.

"In the case at bar the plaintiff knew all about the location and condition of the stairs and he was compelled to use them as long as he lived where he did. He had no other means of ingress or egress. When he started down the stairs he was not blindly venturing into the unknown but was attempting to circumvent dangers of which he knew. * * *"

We think that the facts in the instant case are closer to the Heidenreich decision than to Papakalos. Cf. Hashim v. Chimiklis, 1941, 91 N.H. 456, 21 A.2d 166; Holmes v. Clear Weave Hosiery Stores, 1949, 95 N.H. 478, 66 A.2d 702; Ahearn v. Roux, 1949, 96 N.H. 71, 69 A.2d 701; Blackman v. Rowe, 1950, 96 N.H. 207, 72 A.2d 460; Jutras v. Satters, Inc., 1950, 96 N.H. 300, 75 A.2d 712.

We do not agree with plaintiff's contentions that her conduct was at worst a mistake of judgment or that she was momentarily forgetful. The facts in this case do not present a situation where the plaintiff has made an error of judgment in an emergency. Folsom v. Concord & M. R. R., 1896, 68 N.H. 454, 38 A. 209; Carney v. Concord St. Ry., 1903, 72 N.H. 364, 57 A. 218; MacKelvie v. Rice, 1943, 92 N.H. 465, 32 A.2d 818. Also, this is not a situation where the plaintiff was "inadvertent to conditions indicative of danger, where adequate diverting circumstances are present." Public Service Co. of New Hampshire v. Elliott, 1 Cir., 1941, 123 F.2d 2, 7.

Therefore, on the plaintiff's own testimony, we find as a matter of law that she was guilty of contributory negligence in backing into the defendant's grease room. In view of this conclusion, it becomes unnecessary for us to consider the other questions raised on this appeal.

The judgment of the district court is vacated and the case is remanded to that court

for the entry of judgment in favor of defendant; appellant recovers costs on appeal.

MAGRUDER, Chief Judge (concurring).

I concur in the opinion and judgment of the court. I also think that defendant was entitled to a directed verdict because there was no evidence of a breach of duty by him. It is clear that plaintiff entered the grease pit room for no business purpose, and it would seem at best that plaintiff was only a gratuitous licensee therein. Certainly defendant had no duty to warn plaintiff specifically of the presence of the grease pit, which was open and obvious in broad daylight. Assuming that there was a slippery condition around the edges of the grease pit, and that defendant was aware of this condition, naturally not an uncommon one in such premises, yet we think defendant was not under a legal duty to warn plaintiff of the danger of slipping near the edge of the pit. Plaintiff's call at defendant's garage was for a purpose not involving any incidental use of the grease pit room, which was off from the main part of the garage. When defendant left plaintiff seated safely in the car and went into the office to check the charts so as to determine how much Zerone to put into the radiator, he had no reason to anticipate that plaintiff would have occasion to come near the slippery edge of the grease pit. As stated in Am.L.Inst., Restatement of Torts § 342, Comment *f*: "A possessor of land who permits gratuitous licensees to enter thereon, is subject to liability for bodily harm caused to them by the dangerous state in which he permits a natural or artificial condition to remain, if, but only if, he not only knows of the condition but also realizes it involves an unreasonable risk of causing bodily harm to the particular licensee harmed thereby. In determining whether the possessor should realize that a known condition involves not only a risk but an unreasonable risk, the character of the invitation or permission is important. A condition, no matter how dangerous to those who come in contact with it, can involve risk to a particular licensee only if he may be expected to encounter it in the exercise of his license."