DOLE FRESH FRUIT COMPANY,
Plaintiff,

v.

DELAWARE COLD STORAGE, INC.
a.k.a., Rosenberger Cold Storage
Companies, Defendant.

Civil Action No. 96–27 MMS.

United States District Court,
D. Delaware.

Argued Jan. 7, 1997.

Decided March 25, 1997.

Vincent A. Bifferato, Jr., Herrmann & Bifferato, P.A., Wilmington, DE, J. Michael Johnson, Gollatz, Griffin & Ewing, P.C., Philadelphia, PA, for plaintiff.

James W. Semple, Morris, James, Hitchens & Williams, Wilmington, DE, for defendant.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### INTRODUCTION

Plaintiff Dole Fresh Fruit Co. ("Dole"), filed a complaint against Delaware Cold Stor-

age, Inc. ("DCS") for breach of contract, violation of 13 Pa. Cons.Stat. § 7201, et. seq., negligent bailment and negligent misrepresentation. Docket Item ("D.I.") 1. The dispute centers around DCS's storage of Dole's Red Sensation and Bartlett pears ("pears"). This Court has subject matter jurisdiction based on diversity of citizenship, *see* 28 U.S.C. § 1332. The parties agree Pennsylvania law governs the case pursuant to a choice of law provision in their contract. *See* D.I. 25, at 11–12; D.I. 29, at 12.

Before the Court is DCS's motion for summary judgment on all claims against it except negligent misrepresentation. D.I. 25. At oral argument, DCS informed the Court its motion for summary judgment on a counterclaim asserted against Dole—for indemnification if DCS is found liable for damage to the fruit of a third party, also stored with DCS—is withdrawn. DCS further seeks attorneys fees, which are provided for under the contract.[1] Also before the Court is Dole's motion to amend its complaint to add a count seeking restitution. D.I. 31.

## FACTS

The parties entered into a contract on December 3, 1993, for cold storage services. *See* A–50–55 [2] (Contract). The contract called for DCS to cold store Dole's pears from February 1, 1994, to July 31, 1994. *Id.* Three terms of the contract are especially

pertinent. DCS was to (1) maintain a facility with a temperature of 30 degrees Fahrenheit and humidity level of 90% or greater; (2) provide daily reports on such temperature and humidity; and (3) immediately report any problems therewith. *Id.* There is a provision in the contract, although ambiguous, which may have permitted DCS to reject certain fruit upon its delivery for storage.[3] A–53; *see also* B–7 (deposition of Milford Brent Parker).

In February 1994, soon after Dole began storing fruit with DCS, it became apparent the agreed upon temperature was not being maintained, and in fact the room was warmer than 30 degrees. A–66–70. DCS does not dispute the required temperature was not maintained. D.I. 25, at 12. However, as DCS points out, the pulp temperature of Dole's pears on arrival was generally higher than 30 degrees. In fact, it ranged from 30 to 42 degrees Fahrenheit, with the average temperature 35.5 degrees. A–122.

At some point early in 1994, DCS notified Dole that DCS had accepted for storage in the same cold room a shipment of fruit owned by William H. Kopke, Jr. Inc. B–42– 43. According to Dole, Kopke's fruit was considered "hot" because it had yet to be cooled in cold storage; also according to the Dole, one possible result of storing it with Dole's fruit is it could warm the cold room.[4] *Id.* DCS informed Dole this fruit would be

---

1. That request is denied. The provision calls for attorneys fees for the "prevailing party" in an action or proceeding under the contract. The Court will not award DCS summary judgment and therefore DCS is not the prevailing party at this juncture.

2. The cites beginning with "A" refer to documents found in the appendix to defendant's brief in support of its motion for summary judgment. Plaintiff, in its appendix accompanying its answering brief, also labeled its documents with an "A" prefix. To avoid confusion, the Court will cite to those documents using "B" as a prefix. Documents found in the appendix accompanying defendant's reply brief are labeled with "SA" as a prefix.

3. That provision states: "Rejections: No rejected product shall be accepted without express written authorization from Dole. Any rejected product received in shall be isolated for shipment only when requested in writing from Dole by pallet ID number." A–53.

4. This fact is not well documented. It appears in the deposition of plaintiff's witness Joan Della Croce, who testified that DCS employee Milford Brent Parker told her "Kopke brought in a large volume of hot late pick." B–42. This is hearsay, and Parker's deposition is silent on the subject. In the Third Circuit, hearsay testimony may be considered by a court on summary judgment if the testimony is "capable of being admissible at trial." *Stelwagon Manufacturing Co. v. Tarmac Roofing Systems, Inc.,* 63 F.3d 1267, 1275 n. 17 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1264, 134 L.Ed.2d 212 (1996). The Court will consider this testimony, on the basis Dole could call Parker as a witness at trial. *Cf. Philbin v. Trans Union Corp.,* 101 F.3d 957, 961 n. 1 (3d Cir.1996) (hearsay statement of unidentified individual may not be considered on summary judgment because not capable of being admissible at trial).

removed quickly from the cold room but it was not moved as quickly as DCS anticipated. *Id.*

On March 21, 1994, Dole was informed by one of its agents the cold room evidenced an "overpowering pear odor", which was indicative of a high level of ethylene—a gas emitted by pears which enhances ripening. *See* D.I. 29; B–50. Dole contacted DCS and instructed it to ventilate the room. B–51. DCS's practice was to monitor the ethylene level in the cold room once per month; apparently the levels had skyrocketed since the last check. B–53.

On April 5, 6 and 7, 1994, the parties commissioned a joint survey of the condition of the pears. A–63; 71; 80. Dole's representative was J.M. Hughes Co., and DCS's representative was Joseph Irwin, Inc. *Id.* Each representative filed a report.[5] A–122–138; A–142–159. Both reports opine, relying on DCS records, there was no mechanical failure related to the cold room. A–125; A–159. The Hughes report does not assign fault for the condition of the pears; the Irwin report states "[I]t is our position that elevated temperatures and ethylene levels found in room C (South) were more likely the result of conditions created by breakdown of pears affected by brown surface discoloration/senescent scald[6] and not Delaware Cold Storage, Inc., failure to properly cool and store pears." A–159. As a result of the survey, it was agreed by all that the portion of Dole's stored pears that were rotting had to be removed from the cold room to preserve the quality of the other fruit. Upon removal of those pears, the temperature in the cold room was finally able to stabilize at the contract temperature. A–126.

After their removal, Dole submitted a sample of the pears to an expert, Dr. Mitcham. Dr. Mitcham wrote a letter in response stating she believed the pears exhibited "classic symptoms of Senescent Scald which develops on pears after the fruit become 'old' in stor-age." *See* A–120 (Mitcham Letter). Mitcham continued:

> Senescent scald is enhanced by the same environmental conditions that promote fruit ripening including late season harvest, slow cooling after harvest, warm storage temperature and ethylene gas. *Id.*[7]

Thereafter, each side blamed the other for the damage. Dole argues DCS maintained the cold room at a temperature above 30 degrees, causing the fruit to spoil. DCS argues the fruit was already in a condition of "advanced maturation" when it arrived; most notably, it had an average temperature of 35 degrees upon arrival, which was impossible to lower. D.I. 25, at 5. DCS promises to offer expert testimony to this effect. *Id.* at 9. DCS especially notes Dole has been unable or unwilling to produce records reflecting the temperatures and condition of the pears before they left Chile, and during transport to the United States. *See* A–12, 16, 20.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is governed by Federal Rule of Civil Procedure 56, and will be granted when, on the record before the Court, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In order to defeat 'a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor.' " *Hampton v. Borough of Tinton Falls Police Dep't,* 98 F.3d 107, 112 (3d Cir. 1996) (citation omitted). In a case where the nonmoving party bears the burden of proof at trial on a dispositive issue, that party must "go beyond the pleadings, and by [that party's] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*

---

5. Dole indicated Hughes may testify as a fact witness.

6. Senescent scald, as will be explained later, is a condition affecting pears that have become "old" in storage. A–120 (Mitcham letter).

7. Dole informed the Court Dr. Mitcham will not be called as an expert to testify at trial.

*Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. Pro. 56(e)).

> In essence, the non-moving party must demonstrate a dispute over facts that might affect the outcome of the suit.... Moreover, in reviewing the record, we must give the non-moving party the benefit of all reasonable inferences.

*Hampton,* 98 F.3d at 112.

Summary judgment is appropriate if, after discovery is taken, a party can not put forth any facts establishing a required element of its cause of action. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. In such a case, "there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

On the other hand, "where the movant [seeking summary judgment] bears the burden of proof at trial [on a dispositive issue] and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3d Cir.1992).

## II. Causation

### a. Burden of Proof

In the complaint, Dole charges DCS breached the contract by failing to draw down the temperature of the cold room prior to the arrival of the pears, failing to notify Dole of hazards impacting on the integrity of Dole's product, and failing to achieve and maintain the required temperatures under the contract. D.I. 1, at 7. Dole further charges violation of Pennsylvania's warehouseman statute, 13 Pa. Cons.Stat. § 7201, and negligent bailment. *Id.* at 8–10.

DCS's motion for summary judgment hinges on its assertion Dole has not put forth sufficient evidence of causation to survive

summary judgment. D.I. 25, at 12, 17. To analyze this position, it is first necessary to consider who bears the burden of proof on each of Dole's claims; for, if DCS bears the burden of proving causation, in order to prevail on its motion for summary judgment it must establish the absence of a material issue of fact regardless of opposing evidentiary matter. *Resolution Trust Corp.,* 960 F.2d at 340.

Dole asserts because this case revolves around a bailment contract, DCS, as the bailee, bears at least an initial burden on all Dole's claims of coming forward with evidence it did not cause the damage to the pears. DCS argues Dole bears the burden of proving causation.

### i. Bailment Claims [8]

 Bailment involves "delivery of personalty for the accomplishment of some purpose upon a contract, express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, otherwise dealt with according to his directions or kept until he re-claims it." *Price v. Brown,* 545 Pa. 216, 680 A.2d 1149, 1151 (1996) (citation omitted). Dole is correct a cause of action for breach of a bailment agreement involves a shifting burden of proof. First, Dole, as bailor, must put forth evidence of a prima facie case: that it delivered personalty to DCS, the bailee; that it made a demand for return of the property; and the bailee failed to return the property, *or returned it in damaged condition. Id.* 680 A.2d at 1152. Once the prima facie case is met, DCS, the bailee, must come forward with evidence "accounting for the loss." *Id.* If the bailee fails to do so, it is liable for the loss because it is assumed the bailee failed to exercise reasonable care required by the agreement. *Id.* If the bailee successfully puts forth "evidence showing that the personalty was lost and the manner in which it was lost, and the evidence does not disclose a lack of due care on his part, then the burden of proof again shifts to the bailor who must

---

8. Dole's claim that DCS violated Pennsylvania's warehousemen statute will be considered a bailment claim for purposes of this motion. The Court was unable to locate any case law under

that statute, and therefore, for this limited purpose accepts DCS' averment that the statute merely codifies the existing common law of bailment. *See* D.I. 25, at 20.

prove negligence on the part of the bailee." *Id.*

■ Although not clearly spelled out, case law indicates the bailee's burden of "accounting for the loss" encompasses a showing the bailee was not negligent and/or his actions were not the cause of the loss. *See e.g. E.I. duPont de Nemours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 236 A.2d 555, 557 (1967) (holding the bailee must show "the cause of the damage or loss, if possible ...."). Accordingly, on Dole's bailment claims, DCS will bear an initial burden of putting forth evidence it was not negligent and/or that it did not cause the damage to Dole's pears.

ii. Contract Claim

■ In addition to its bailment claims, however, Dole also has asserted a breach of contract claim against DCS. This claim is not based on DCS' return of the property in damaged condition, but instead upon DCS' failure to adhere to the terms of the cold storage agreement. Dole's contract claim is an ordinary contract claim; Dole does not thereby allege a prima facie bailment case that would give rise to the shifting burden of proof. In an ordinary breach of contract claim, the plaintiff bears the burden of proof of causation. *S.J. Groves & Sons Co. v. Warner Co.*, 576 F.2d 524, 527 (3d Cir.1978). Thus Dole must prove causation in connection with its contract claim.

b. Evidence of Causation

■ Although Dole initially is not required to put forth any evidence of causation on its bailment claims, it is required to do so on its contract claim. For the following reasons, the Court holds Dole has put forth sufficient evidence of causation to withstand a summary judgment motion on either of its claims.

DCS' argument that summary judgment is warranted is based on the fact it has put forth expert testimony that it did not cause the damage to Dole's pears, and Dole has not

countered with its own expert testimony that DCS did cause the damage to the pears. This omission, DCS urges, is fatal to Dole's claims.

Dole concedes it has no expert testimony in support of its view of causation. It does not dispute it cannot point to the Dr. Mitcham letter, because an unsworn letter may not be considered on summary judgment. *See* Fed. R. Civ. Pro. 56(e). However, Dole's position is the cause of fruit spoilage is not a topic that requires expert testimony. Dole points to the uncontroverted fact that the temperature in the cold storage room was above the agreed-upon 30 degrees, and argues the jury can infer DCS' failure to maintain that temperature caused the damage.

Dole's position that DCS caused the fruit's damage is buttressed by testimony of Milford Brent Parker, DCS' assistant manager, who testified pears above 40 degrees would be considered "hot" and he would have a problem storing them. A–42. Viewing this testimony in a light favorable to Dole, as the Court must on DCS's motion for summary judgment, the implication of Parker's testimony is DCS could have cooled Dole's pears—most of which arrived at temperatures below 40 degrees—and its failure to do so caused the damage.

The question presented by DCS' motion, then, is whether—despite the evidence outlined above—Dole's case must fail because of the absence of expert testimony on causation. The parties agree the requirement of expert testimony is governed by Pennsylvania state law.

i. Does Pennsylvania Law Require Expert Testimony on the Cause of Fruit Spoilage?

■ DCS relies on *Phillips v. Delaware Power & Light Co.*, 216 A.2d 281 (Del.1966), for the proposition expert testimony is required in this case.[9] In *Phillips*, at issue was the cause of a break in a gas pipe connected to a house, which caused an explosion. The plaintiffs' experts testified the break could

9. Despite the agreement that Pennsylvania law governs, DCS has cited mostly Delaware cases on this point. *See* D.I. 36, at 5–6.

have been caused by repaving of the street above the pipe, performed by a city contractor. The court found plaintiffs' case lacking because no expert testified as to more than a mere possibility of causation, as opposed to probability.

In reaching its conclusion, the court commented, "Obviously, the present situation is one in which the assistance of experts is needed." 216 A.2d at 284. It continued, "If a case cannot be decided intelligently by application to the evidence of common knowledge or such as results from the experience and the observation of the ordinary jury but requires technical knowledge that comes from special experience or training, then, in the absence of such technical knowledge, the plaintiff fails to establish a case." *Id.* (quoting *Jutras v. Satters, Inc.,* 96 N.H. 300, 75 A.2d 712 (1950)).

DCS further cites several cases in which expert testimony was found appropriate, *see Plywood Property Assocs. v. National Flood Ins. Program,* 928 F.Supp. 500, 507 (D.N.J. 1996) (flood damage); *Walter Baxter Seed Co. v. Rivera,* 677 S.W.2d 241, 244 (Tex.App. 1984) (cucumber seed damage), and several cases in which expert testimony was required, *see Money v. Manville Corp.,* 596 A.2d 1372 (Del.1991) (asbestos disease); *Russell v. Kanaga,* 571 A.2d 724, 734 (Del.1990) (medical malpractice); *Steffen v. Colt Industries Operating Corp.,* 1987 WL 8689 (Del.Super.1987) (products liability). Additionally, the Court notes expert testimony is required by statute in certain types of cases. *See e.g.* Del.Code Ann. tit. 18, § 6853 (1996) (expert medical testimony required in health care malpractice cases).

Of these cases cited by DCS, the Court only need be concerned with those cases in which expert testimony was required in order to prove plaintiff's case; the absence of expert testimony in a case where it merely would be helpful is not grounds for summary judgment. Further, the Court does not believe *Steffen,* cited by DCS, stands for the proposition that expert testimony is required in a products liability case. In that case the court granted summary judgment against a plaintiff, stating: "Plaintiff ... has not supported his allegation with an affidavit of an expert testifying as to a design defect *or* with any other kind of evidentiary material with which it is proper to oppose a motion for summary judgment." 1987 WL 8689, at *3 (emphasis added). In that case, expert testimony was just one way the plaintiff could have avoided summary judgment.

The remainder of the cases cited by DCS in which expert testimony was required are all distinguishable from the present case: they all involve intricacies of the human body. Pennsylvania courts have required expert testimony in cases of medical malpractice, for example, because "the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson." *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280, 1285 (1978).

The rule that expert testimony is required in cases involving human injury is not dispositive of this motion. The Court has found no cases in Pennsylvania, or otherwise, explicitly requiring expert testimony on the cause of decaying fruit. Accordingly, the Court must engage in the hazardous task of predicting whether the Pennsylvania Supreme Court would require expert testimony as to the cause of fruit decay. *Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church,* 98 F.3d 78, 92 (3d Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 688, 136 L.Ed.2d 612 (1997).

ii. Would Pennsylvania Courts Adopt a Rule Requiring Expert Testimony regarding the Causes of Fruit Spoilage?

The Pennsylvania courts have stated the need for expert testimony arises when "the jury is confronted with factual issues whose resolution requires knowledge beyond the ken of the ordinary layman...." *Kozak v. Struth,* 515 Pa. 554, 531 A.2d 420, 422 (1987). "The proper function of an expert is to 'instruct the court and jury in matters so far removed from the ordinary pursuits of life, that accurate knowledge of them can only be acquired by a continued study and experience.'" *Id.* (citations omitted).

In light of this authority, the Court is not persuaded the Pennsylvania courts would re-

quire expert testimony in this case. At oral argument, defense counsel was not able to represent that the condition of "senescent scald" was materially different than just plain rotting fruit. Thus the cause of the damage to Dole's pears is not beyond the experience of the average juror. While the jurors may not have experience with cold storage of fruit in a warehouse, they surely have attempted to preserve the freshness of fruit in their own homes. It is within the average juror's knowledge that fruit will spoil faster if it is not refrigerated than if it is refrigerated. The jurors could use this experience as a basis for rejecting DCS' expert's testimony. In other words, the cause of the damage to Dole's pears is not "so far removed from the ordinary pursuits of life" to mandate expert testimony to avoid summary judgment. *Kozak*, 531 A.2d at 422; *see also Tuman v. Genesis Assocs.*, 935 F.Supp. 1375 (E.D.Pa.1996) (finding case "resembles a standard negligence case in which there is no bright-line rule requiring expert testimony to assist the trier of fact in determining the question of causation.")

■ This holding is consistent with a black letter rule of law: expert testimony, even if uncontroverted, may be disregarded by a jury. As was stated by a Pennsylvania court, in *Mattox v. City of Philadelphia:*

> [W]hen an expert witness states his opinion, this testimony is to be received by the jury just as any other opinion testimony. The court and jury are not bound by an opinion of an expert. Expert testimony, if believed, merely proves that, in light of the expert's general experience and his observations . . ., he had reached the conclusion announced. These opinions are to be considered with the other evidence; they may be rejected in whole or in part; the weight to be given them is for the jury.

308 Pa.Super. 111, 454 A.2d 46, 53 (1982) (citation omitted). Many other state courts, as well as federal jurisdictions, have adopted similar rules that expert testimony, even uncontradicted, need not be accepted by a jury. *See e.g., Hassan v. Stafford,* 472 F.2d 88 (3d Cir.1973); *Scott v. Scott,* 336 N.C. 284, 442 S.E.2d 493 (1994); *Charrier v. Charrier,* 416 Mass. 105, 616 N.E.2d 1085 (1993); *Eventide*

*Lutheran Home for the Aged v. Smithson Elec. and Gen. Constr. Inc.,* 445 N.W.2d 789 (Iowa 1989); *McGalliard v. Kuhlmann,* 722 S.W.2d 694 (Tex.1986); *Barger v. Farrell,* 289 Ark. 252, 711 S.W.2d 773 (1986). Despite Dole's failure to provide expert testimony on the issue of causation, summary judgment will not be granted for defendant.

**c. Defendant's Impossibility Defense**

■ Because DCS bears the ultimate burden of proof at trial on its affirmative defense, it also bears the burden of demonstrating the absence of a genuine factual issue in order to prevail on its summary judgment motion. *See Resolution Trust Corp.,* 960 F.2d at 340. The Restatement (Second) of Contracts § 261 governs impossibility and impracticability. It states:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless language or the circumstances indicate the contrary.

Comment C to that section indicates it is possible for a party expressly, or even impliedly, to agree to perform the contract despite conditions that otherwise would excuse that party's performance due to impossibility. Comment D indicates impossibility or impracticability usually is the result of "acts of God" or of third parties; "[i]f the event that prevents the obligor's performance is caused by the obligee, it will ordinarily amount to a breach by the latter...." Restatement § 261 has been utilized by the Pennsylvania courts, *see Ellwood City Forge Corp. v. Fort Worth Heat Treating Co.,* 431 Pa.Super. 240, 636 A.2d 219, 222 (1994).

■ DCS's impossibility defense is as follows: "DCS's performance of maintaining temperatures at the contract temperatures was made impossible because the fruit at arrival was in a state of senescent scald with elevated pulp temperatures and pressures." D.I. 25, at 15. DCS continues, "Both of the parties assumed when the contract was made that the fruit would be in a condition upon its arrival such that the contract tempera-

tures could be achieved and maintained." *Id.* Further, DCS argues, its expert found DCS exercised due care and did not cause the damage. *Id.* This "unrebutted" evidence, according to DCS, entitles it to summary judgment on its defense of impracticability. *Id.*

In response, Dole points out that DCS measured the temperature of the pears upon arrival, and therefore knew it was above 30 degrees. A–122 (fruit temperatures upon arrival between 30 and 42 degrees). Dole also highlights the testimony of DCS Assistant Manager Parker, that DCS would have a problem cooling fruit arriving at temperatures of 40 degrees or more, which was not the case with the vast majority of Dole's pears. A–42. Dole believes under the contract DCS was permitted to reject the fruits under certain circumstances, and the fact that it did not reject Dole's pears is evidence DCS did not believe it impossible to cool the pears.

Dole has submitted evidence that could support a jury finding that it was not impossible or impracticable for DCS to meet its contract obligations. As noted above, the jury has no obligation to find for DCS on the basis that Dole has not submitted expert testimony; as with all witnesses, the jury is free to credit or discredit the expert testimony. *Mattox*, 454 A.2d at 53. In this case, a jury could credit Parker's testimony that DCS could cool fruit with a temperature of less than 40 degrees.

Additionally, it is possible that by its actions, DCS agreed to perform under the con-

tract despite its awareness of the high temperature of Dole's pears. It made no effort to utilize the rejection provision of the contract. Thus a jury could find the "language or the circumstances indicate" DCS was not excused from performance. *Cf. West v. Peoples First National Bank and Trust Co.*, 378 Pa. 275, 106 A.2d 427, 432 (1954) (defendant landowner estopped from asserting an impossibility defense when it led plaintiff real estate developer to render services under the contract and accepted benefits therefrom. The facts indicated the parties intended to continue to be legally bound to the contract despite partial condemnation of land at issue).[10]

Accordingly, the DCS is not entitled to summary judgment on its affirmative defense.

## III. Negligence

Dole further charges DCS with (1) violation of 13 Pa. Cons.Stat. § 7201, *et seq.*, and (2) negligent bailment. DCS' attack on both these claims is there is no evidence of negligence, which is a common element of both claims. The Pennsylvania statute provides:

(A) DUTY OF CARE. A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

10. While the Court has referenced a jury, a question remains as to whether DCS's defense is a question of fact or of law. The parties have not briefed the issue and the Court's own research reveals the authority is mixed. The Restatement indicates the question is "one of law rather than fact, for the court rather than the jury." *See* Restatement (Second) of Contracts, Chapter 11 Introductory Note. Further, one leading commentator notes, "Although the[ ] requirements [for a finding of impossibility or impracticability] involve questions of fact, courts have sometimes been reluctant to entrust the granting of excuse on this ground to a jury." E. Allen Farnsworth, Contracts § 9.6, at 708 (2d ed.1990). *Accord TSI Holdings, Inc. v. Jenkins*, 260 Kan. 703, 924 P.2d 1239 (1996). On the other hand, several courts have held a finding of impossibility or impracti-

cability is for a fact finder. *See e.g., Mishara Constr. Co. v. Transit–Mixed Concrete Corp.*, 365 Mass. 122, 310 N.E.2d 363 (1974); *Autry v. Republic Productions, Inc.*, 30 Cal.2d 144, 180 P.2d 888 (1947).

Thus far the Court has found no dispositive authority in the Third Circuit Court of Appeals or the Pennsylvania case law. Several cases indicate the Pennsylvania courts have treated questions of impossibility and impracticability as jury questions. *See Ellwood City Forge Corp. v. Fort Worth Heat Treating Co.*, 431 Pa.Super. 240, 636 A.2d 219 (1994); *cf. Allentown Supply Corp. v. Stryer*, 202 Pa.Super. 78, 195 A.2d 274 (1963). In this case there are a number of factual disputes and it seems appropriate to leave the questions for the determination by a jury.

Dole's claim of negligent bailment also requires proof of negligence. *Price v. Brown,* 680 A.2d at 1152.

Several different types of bailment exist; with each type is associated a different standard of care:

When the bailment is for the sole benefit of the bailor, the law requires only slight diligence on the part of the bailee, and of course makes him answerable only for gross neglect. When the bailment is for the sole benefit of the bailee, the law requires great diligence on the part of the bailee, and makes him responsible for slight neglect. When the bailment is reciprocally beneficial to both parties, the law requires ordinary diligence on the part of the bailee, and makes him responsible for ordinary neglect.

*Ferrick Excavating and Grading Co. v. Senger Trucking Co.,* 506 Pa. 181, 484 A.2d 744, 747–48 (1984) (citation omitted). This bailment was reciprocally beneficial—Dole's pears were to be stored, for which DCS would earn a fee. Therefore DCS owed Dole a duty of ordinary diligence with respect to its pears. Questions of negligent bailment, as with most questions of negligence, are for the jury. *Hershey v. Pittsburgh & West Virginia Ry. Co.,* 366 Pa. 158, 76 A.2d 379 (Pa.1950).

DCS' expert has opined "there was nothing improper, defective or negligent in the process and procedure employed by Delaware Cold Storage during the time it had custody of the Dole fruit." A–109. Further, DCS notes, Dole has not put forth evidence on "the standard of care, or that DCS breached the standard, or that a breach of the standard by DCS was the cause of the alleged loss." D.I. 25, at 20. These factors mandate summary judgment against Dole, DCS says. *Id.*

Dole, on the other hand, points to evidence that DCS employees unloaded pears from the delivery trucks into the cold room very slowly, thus allowing the temperature of the pears to rise. *See* B–28–30 (Deposition of Joan M. Della Croce). Further, Dole urges, allowing Kopke's allegedly hot fruit to be stored in the same room as Dole's fruit is evidence of negligence. D.I. 29, at 18. In addition, DCS only monitored ethylene levels once per month, and when it was discovered that Dole's pears ethylene levels had skyrocketed, DCS's "ethylene scrubbers" were not sufficient; DCS had to order more from California, further compounding the problem. *Id.* at 18–19.

As noted above, there is no requirement that the jury accept expert testimony, even if uncontradicted by other expert testimony. Dole's evidence could support a jury verdict that DCS was negligent. *See Mattox,* 454 A.2d at 53. The Court will deny defendant's motion for summary judgment on that argument.

**IV. Dole's Motion to Amend its Complaint**

Dole seeks to amend its complaint to add a count seeking restitution of money paid under the contract in the amount $45,200, if DCS prevails on its impossibility defense. *See* D.I. 31, at 13–14. Dole relies on sections of the Restatement (Second) of Contracts indicating restitution is an appropriate remedy for unjust enrichment in the case of impossibility or impracticability of performance on a contract. *See* Restatement (Second) of Contracts, §§ 272, 377.

DCS opposes the amendment, urging it is prejudiced by the late date of the amendment. It points out its answer to Dole's complaint—filed March 7, 1996—notified Dole it intended to rely on a defense of impracticability or impossibility, and that such amendment to Dole's complaint should have been filed long before it was, on October 18, 1996. D.I. 35, at 2. Further, DCS states the amendment is futile, because Dole never made a prima facie case for breach of contract, and thus defendant's defense is never reached.[11] Dole responds by arguing no

---

11. DCS's futility argument must be disregarded in light of the Court's earlier holding that plaintiff has put forth sufficient evidence of causation to survive summary judgment on its contract claim. Moreover, DCS's position that Dole's motion to amend was required by the Court's scheduling order to be filed before September 6, 1996 is rejected. The Court's scheduling order provided all *case dispositive* motions be filed by that

new factual issues are raised—it merely seeks an alternative form of relief arising from the same facts plead in its original complaint. Thus it concludes DCS would not have conducted its defense any differently had it known a claim for restitution was at issue. D.I. 38, at 2.

■■■ Rule 15 of the Federal Rules of Civil Procedure, governing amendment of pleadings, permits a plaintiff to amend a complaint once as a matter of right before a responsive pleading is filed, and afterward, a "party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). A district court has the discretion to grant or deny leave to amend. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, the trial court may not deny leave to amend "[i]n the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment...." *Id.*

The exceptions to the liberal policy of granting leave to amend were further explained in *Adams v. Gould, Inc.,* 739 F.2d 858 (3d Cir.1984), where the Third Circuit Court of Appeals stated:

> The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.... The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

*Id.* at 868 (citation omitted). The Third Circuit appellate court has also stated that

"prejudice to the non-moving party is the touchstone for the denial of an amendment." *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d Cir.1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir.1978)).

The Court agrees with Dole that DCS has not pointed to sufficient prejudice, beyond the late date of the amendment, which would suffice as a reason to deny Dole's motion. While the Court recognizes the time and expense DCS has spent in discovery, it merely agrees with Dole that it is unlikely DCS would have conducted its case any differently had it been aware of the claim for restitution. See *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 668 F.Supp. 906, 922 (D.Del.1987) (permitting amendment where additional request for injunction "only raises a new form of relief, and the underlying claims remain exactly the same"); *but see United States v. 47 Bottles,* 320 F.2d 564, 573 (3d Cir.1963) (finding abuse of discretion to allow plaintiff to add a claim for an injunction where defendant claimed it needed additional time for discovery of equitable defenses). Dole's motion will be granted.

date. *See* D.I. 8, at 2. Dole's motion to amend is

not case dispositive.